# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

LAKEISHA BYRD; et al.,                    ]
                                          ]
    Plaintiff(s),               ]
                                          ]
    vs.                         ]    CV-01-CO-1433-S
                                          ]
WALTER WOOD, et al.,                      ]
                                          ]
    Defendant(s).               ]

**ENTERED**

JAN 2 2 2004

ANGELICA SEITZ, et al.,                   ]
                                          ]
    Plaintiff(s),               ]
                                          ]
    vs.                         ]    CV-01-CO-2156-S
                                          ]
ALABAMA DEPARTMENT OF                     ]
YOUTH SERVICES, et al.,                   ]
                                          ]
    Defendant(s).               ]

## MEMORANDUM OF OPINION

This cause is before the court for consideration of: (1) motions to

strike exhibits to the complaint, filed by defendants Alabama Department

of Youth Services (hereinafter, "DYS"), Walter Wood and Jerrell Barbee [Docs. 217, 232]; (2) a motion to strike plaintiffs' exhibits 2, 3, 5, 6, 7 and 8 filed in opposition to the motions for summary judgment by DYS and Wood [Doc. 188]; (3) a motion to dismiss the complaint, filed by Barbee [Doc. 216]; (4) a motion for summary judgment and renewed motion for summary judgment filed by DYS and Wood [Docs. 159, 225]; and (5) a motion under Rule 56(f) and accompanying affidavit. [Docs. 182, 183]. The motions have been fully briefed and are ready for submission.

Upon due consideration and for the reasons stated herein:

(1) the motions to strike exhibits to the complaint, filed by defendants DYS, Wood and Barbee [Docs. 217, 232] will be DENIED;

(2) the motion to strike plaintiffs' exhibits 2, 3, 5, 6, 7 and 8 filed in opposition to the motions for summary judgment by DYS and Wood [Doc. 188] will be DENIED as MOOT;

(3) the motion to dismiss the complaint, filed by Barbee [Doc. 216] will be GRANTED IN PART and DENIED IN PART. The claims for injunctive and declaratory relief will be dismissed. The claims against Barbee in his

individual capacity under Section 1983 for compensatory and punitive damages remain pending;

(4) the motion for summary judgment and renewed motion for summary judgment filed by DYS and Wood [Docs. 159, 225] will be GRANTED IN PART AND DENIED IN PART.  The claims for injunctive and declaratory relief will be dismissed.  The claim for punitive damages against DYS will be dismissed.  The claims against Wood in his individual capacity under Section 1983 for compensatory and punitive damages remain pending.  The claim against DYS under Title IX for compensatory damages remains pending; and

(5) the motion under Rule 56(f) and accompanying affidavit. [Docs. 182, 183] will be GRANTED.

I.      **The Motions to Strike.**

A motion to strike is appropriate under Fed. R. Civ. P. 12(f) for "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  *Id.*  A Rule 12(f) motion is addressed only to the pleadings and should not be used to object to an affidavit filed in support of a motion.  *Smith v. Southeastern Stages, Inc.,* 479 F. Supp. 593, 594-5 (N.D. Ga. 1977), citing Wright and Miller, Federal Practice & Procedure §

1380. "It is sufficient for the party opposing the motion to register its objection to the movant's affidavits by way of the material submitted in opposition to the motion. The court will then implicitly, if not explicitly, rule upon these objections in its consideration of the motion." *Id.*

Applying this standard, it is apparent that the motion by DYS and Wood to strike plaintiffs' exhibits 2, 3, 5, 6, 7 and 8 filed in opposition to the motions for summary judgment, is due to be denied.[1] However, the motion is moot due to the court's conclusion that the motions for summary judgment must be treated as motions to dismiss. As discussed below, these exhibits need not be considered at all since the court is limited to determining whether the plaintiffs have made sufficient allegations in their complaint.

The motions to strike exhibits to the complaint, filed by DYS, Walter Wood, and Barbee [Docs. 217, 232], will also be DENIED. The offending exhibits are:

---

[1]These exhibits were filed in response to the defendants' May 15, 2003, motion for summary judgment and are attached to court document 180. They are, in many respects, identical to the documents attached to the complaint, discussed *infra.*

(1) a complaint alleging numerous claims of sexual misconduct by DYS employees at the Chalkville Campus which are the subject of a state-court proceeding entitled *Amber Elizabeth Hoover, et al. v. John Zeigler, et al.*, civil action number CV-02-0314-CPP, Jefferson County (Alabama) Circuit Court;

(2) an affidavit and EEOC complaint of Julius Smith, former Youth Services Counselor at the DYS Chalkville Campus, which sets forth Mr. Smith's experience in reporting his suspicions that a DYS employee was sexually abusing a Chalkville Campus student;

(3) an affidavit of Joe Denny, Jr., father of former DYS Chalkville Campus student Amy Denny, and a letter from James Caldwell, superintendent of the Chalkville Campus special school district, concerning Mr. Denny's complaint of sexual abuse of his daughter Amy by DYS Chalkville employees;

(4) an affidavit of Jennifer Denise McCain, court child support documents and paternity test documents showing that DYS Chalkville Campus employee Peter Aseme is the father of Jennifer's child and that their relationship began while Jennifer was incarcerated at Chalkville;

(5) information about a law enforcement investigation of alleged sexual and physical abuse of plaintiff Crystal Lewis on May 21, 2001, by DYS Chalkville employees John Mack and John Zeigler;

(6) a memorandum from James Caldwell dated July 27, 1994, to unit managers at DYS Chalkville Campus regarding student abuse; and

(7) a memorandum from Shirley Horn, DYS employee at DYS Chalkville Campus, dated October 21, 1996, concerning verbal and physical abuse of students by DYS staff employees.

Contrary to defendants' argument, exhibits 1 (*Hoover v. Zeigler* complaint), 2 (affidavit of Julius Smith), 3 (affidavit of Joe Denny and accompanying letter from Caldwell), and 4 (affidavit of Jennifer McCain) are relevant to plaintiffs' claims in that they tend to show persons other than the plaintiffs have complained and are complaining of sexual abuse at the Chalkville Campus. Therefore, they add support to the plaintiffs' averments that the alleged abuse was so widespread the supervisory officials could not have failed to know about the problem. Exhibit 5, including the documents regarding the police investigation of Crystal Lewis's alleged abuse, is supportive of her claims and is not redundant or confusing as defendants

claim. Exhibit 6, a memo from Caldwell to unit managers regarding student abuse by staff, does not refer only to verbal and physical abuse as defendants claim. Caldwell states only that the abuse "includes" verbal and physical abuse. The court cannot say that Exhibit 7, a memo from Shirley Horn regarding DYS employees' behavior with students, is completely immaterial to plaintiffs' claims. At a minimum, it tends to show that some DYS Chalkville Campus employees had learned of problem behavior between DYS employees and students.

As discussed below, the court finds the complaint sufficient without reference to the exhibits and, in that sense, the exhibits are redundant. However, in view of the defendants' history of filing motions to strike the plaintiffs' previous complaints in their entirety, and defendants' resistance to any of the plaintiffs' preliminary discovery attempts, the court is inclined to overlook the plaintiffs' desire to put all the evidence they have in the record. The exhibits are not confusing, nor is their probative value outweighed by unfair prejudice. *See* F.R.E. 403. The court will leave the sufficiency of the allegations in the complaint for a determination on the merits.

Accordingly, the motions to strike will be denied.

## II.    Barbee's Motion to Dismiss.

The plaintiffs in this action are young women who, prior to age 18, were involuntarily committed to the residential juvenile detention center and training school known as the Alabama Training School for Girls, Chalkville Campus (hereinafter, "Chalkville Campus") under the authority and control of DYS. Restated and Amended Complaint, Doc. 211, ¶ 6. The plaintiffs allege they were raped and otherwise physically and sexually abused by various DYS employees while they were incarcerated at Chalkville Campus.  They assert constitutional claims under 42 U.S.C. § 1983 against the DYS employees who allegedly committed the abuse and against the DYS supervisors: DYS Executive Director Walter Woods, Chalkville Campus Superintendent James Caldwell, and Chalkville Campus school principal Jerrell Barbee.

Some of the plaintiffs allege they reported the abuse, and other plaintiffs state that the DYS employees' threats or promises of early release dissuaded them from reporting.  Nevertheless, the plaintiffs collectively claim the DYS supervisory defendants had actual or constructive knowledge

of their subordinate employees' widespread, long-standing and ongoing pattern of sexually abusing, assaulting, molesting and harassing the involuntarily confined female juvenile students at least since October 7, 1997, the date a named plaintiff was first committed to the Chalkville Campus. Complaint, ¶¶ 26, 47, 50-53. The plaintiffs claim the supervisory defendants were "deliberately indifferent to the violation of [plaintiffs'] said constitutionally protected liberty interest by failing to discharge their affirmative duties to prevent or take corrective action to stop the aforesaid sexual misconduct, of which the said supervisory employees and officials of DYS and Chalkville Campus either knew or should have known . . . ." Complaint, ¶ 53. The plaintiffs allege the supervisory defendants are responsible in their individual capacities for violations of plaintiffs' substantive and procedural due process rights under the Fourteenth and Eighth Amendments to the United States Constitution. The supervisory officials are also sued in their official capacities for declaratory and injunctive relief.

### A.    Qualified Immunity.

Barbee contends he is entitled to qualified immunity as to the Section 1983 claims against him in his individual capacity.   "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   A public official is entitled to qualified immunity if his actions were objectively reasonable.   *Id., citing Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987).

To be successful on a qualified immunity defense, a public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). If the defendant makes such a showing, the burden shifts to the plaintiff to prove that qualified immunity does not apply. *Lee*, 284 F.3d at 1194.   The first part of the test is satisfied, in that Barbee's discretionary activities as principal of the Chalkville Campus school are directly implicated in the plaintiffs' allegations.

The Eleventh Circuit utilizes a two-part test to ascertain whether a public official is protected by qualified immunity. First, the court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Vinyard*, 311 F.3d at 1346 (citing *Hope v. Pelzer*, 536 U.S. 730, 735 (2002)). If the court is convinced that a constitutional right would have been violated under the plaintiff's version of the facts, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* The court will deny a public official qualified immunity only if the plaintiff convinces the court that the constitutional right at issue was clearly established at the time of the alleged violation. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

According to the Eleventh Circuit's discussion of qualified immunity in *Vinyard*, there are three ways in which a plaintiff can establish that the constitutional right in question was clearly established at the time it was allegedly violated. First, the plaintiff can establish that the circumstances of his claim present an "obvious clarity" case: one in which "the words of the pertinent federal statute or federal constitutional provision . . . [are] specific enough to establish clearly the law applicable to particular conduct

. . . and to overcome qualified immunity, even in the total absence of case law." *Vinyard*, 311 F.3d at 1350. The Eleventh Circuit further defined the "obvious clarity" case as one in which "the words of a federal statute or federal constitutional provision [are] so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.*

The second way of establishing a clearly established constitutional right arises where "the conduct is not so egregious as to violate [a constitutional provision] on its face, [but there are] some broad statements of principle in case law [that] are not tied to particularized facts [that] can clearly establish law applicable in the future to different sets of detailed facts." *Id.* at 1351. While it was unable to give specific examples of what kinds of cases might meet this type of clearly established constitutional right, the court was careful to point out that "many broad principles of law [such as the statement that the use of excessive force by a law enforcement agent is unconstitutional] remain insufficient to give fair notice or warning." *Id.* at 1351 n.21.

Finally, a plaintiff can succeed in showing the violation of a clearly established constitutional right by bringing to the court's attention "cases

Page 12 of 37

in which the Supreme Court or [the Eleventh Circuit] has said that 'Y Conduct' is unconstitutional in 'Z Circumstances.'" *Id.* at 1351. "If the circumstances facing [the] governmental official [in the case before the court] are not fairly distinguishable [from a Supreme Court or Eleventh Circuit case declaring certain conduct unconstitutional], the precedent can clearly establish the applicable law." *Id.* at 1352. Thus, this third means of showing that the constitutional right in question is clearly established requires a significant degree of factual similarity between the case before the court and the precedent relied upon by the plaintiff. *See id.*

As noted above, the plaintiffs aver that the DYS supervisory defendants, including Barbee, had actual or constructive knowledge of their subordinate employees' widespread, long-standing and ongoing pattern of sexually abusing, assaulting, molesting and harassing the female juvenile students involuntarily confined at Chalkville Campus, at least since October 7, 1997, the date a named plaintiff was first committed to the Chalkville Campus.  Complaint, ¶¶ 26, 47, 50-53. They claim Barbee and the other supervisory defendants were "deliberately indifferent to the violation of [plaintiffs'] said constitutionally protected liberty interest by failing to

Page 13 of 37

discharge their affirmative duties to prevent or take corrective action to stop the aforesaid sexual misconduct, of which the said supervisory employees and officials of DYS and Chalkville Campus either knew or should have known . . . ." Complaint, ¶ 53.

The plaintiffs had a Fourteenth and Eighth Amendment right to physical safety and bodily integrity while they were involuntarily committed to the custody of DYS and confined at the Chalkville Campus. *See Taylor v. Ledbetter*, 818 F.2d 791, 794 (11th Cir. 1987), *cert. denied,* 489 U.S. 1065 (1989)(state assumed obligation of providing safe environment for child involuntarily placed in foster care and abuse of child by foster mother constituted deprivation of liberty interest under Fourteenth Amendment); *Youngberg v. Romeo*, 457 U.S. 307 (1982) (involuntarily committed mentally retarded individual has Fourteenth Amendment right to safe conditions of confinement).

This right was clearly established prior to the first incarceration of a plaintiff in this action on October 7, 1997. In *DeShaney v. Winnebago Cty. Dept. of Social Services*, 489 U.S. 189 (1989), the United States Supreme

Court held that a state's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause, but said:

> It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. In *Estelle v. Gamble*, . . ., we recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, . . . , requires the State to provide adequate medical care to incarcerated prisoners. . . . We reasoned that because the prisoner is unable "'by reason of the deprivation of his liberty [to] care for himself,'" it is only "'just'" that the State be required to care for him. . . . In *Youngberg v. Romeo*, . . . , we extended this analysis beyond the Eighth Amendment setting, holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others. . . . As we explained: "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed – who may not be punished at all – in unsafe conditions." . . . Taken together, [these cases] stand . . . for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and

> reasonable safety - it transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 198-200 (citations omitted).  The plaintiffs'

constitutional claim is not fairly distinguishable from the rights recognized

in *Taylor v. Ledbetter, Youngberg v. Romeo,* and *DeShaney*.  *Vinyard,* 311

F.3d at 1352.  These cases stand for the proposition that a person

involuntarily committed to the state's custody is entitled to "reasonable

safety."  *DeShaney,* 489 U.S. at 200.  *Cf.  Spivey v. Elliott,* 29 F.3d 1522

(11th Cir. 1994), *amended on reconsideration,* 41 F.3d 1497 (1995)

(pretermitting question of whether state had duty to protect voluntary

residential student at Georgia school for deaf from sexual assault by

classmate).

Furthermore, it was clearly established prior to October 7, 1997, that

supervisors could, in certain specified circumstances, be liable for the

constitutional violations of their subordinates. Although supervisory officials

are not liable under § 1983 for the unconstitutional acts of their

subordinates under theories of *respondeat superior* or vicarious liability,

*Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994), they can be

liable

> either when the supervisor personally participates in the alleged
> constitutional violation or when there is a causal connection
> between actions of the supervising official and the alleged
> constitutional deprivation.   The causal connection can be
> established when a history of widespread abuse puts the
> responsible supervisor on notice of the need to correct the
> alleged deprivations, and he fails to do so.   The deprivations
> that constitute the widespread abuse sufficient to notify the
> supervising official must be obvious, flagrant, rampant, and of
> continued duration, rather than isolated occurrences.

*Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999),[2] *citing Brown v.*

*Crawford,* 906 F.2d 667   671 (11th Cir. 1990)(citations omitted).   See

*Braddy v. Fla. Dept. of Labor and Security*, 133 F.3d 797, 801-02 (11th Cir.

1998)(causal connection between supervisor's actions and constitutional

violation is established when deprivations are obvious, flagrant, rampant

---

[2]Defendant Wood argues that the supervisory officials should be dismissed
pursuant to *Hartley* and *Dolihite v. Maughon*, 74 F.3d 1027, 1053-54 (11th Cir. 1996).  In
*Hartley*, the Eleventh Circuit found the plaintiff had not adduced evidence at the
summary judgment stage showing any prior abuse that put the supervisory defendant on
notice, nor was there evidence of a policy in place prior to the abuse which could have
led the perpetrator to believe the supervisory defendant permitted sexual abuse of
students.  In *Dolihite*, the Eleventh Circuit recognized that an administrator's failure to
abate violence may constitute deliberate indifference, but found there was insufficient
evidence of notice at the summary judgment stage.  At this motion to dismiss stage, the
allegations in the pleadings are sufficient and *Hartley* and *Dolihite* are inapposite.  *See
discussion, infra.*

and of continued duration rather than isolated occurrences).   A causal connection may also be established where the supervisor's improper "custom or policy" results in deliberate indifference to constitutional rights. *Id., citing Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).   The plaintiffs have alleged the abuse at Chalkville Campus was so widespread that Barbee and the other supervisory defendants were on notice of the need to correct the unconstitutional conditions.   They also claim the supervisory defendants were deliberately indifferent to the sexual abuse, assaults, and harassment of juvenile female students at the Chalkville Campus despite their knowledge that there was a substantial risk of serious harm.   Complaint, ¶¶ 26, 47, 50-53.[3]   Their claims fall squarely within the parameters for establishing supervisor liability under Section 1983, which were well-established prior to October 7, 1997.

---

[3]Barbee contends the plaintiffs have not presented sufficient proof that he had knowledge of the sexual abuse.   However, on this motion to dismiss, the plaintiffs' have sufficiently alleged that the widespread and continuing nature of the constitutional violations put Barbee and the other supervisory defendants on notice.   Compare, *Does 1, 2, 3, and 4 v. Covington Cty. School Bd.*, 884 F. Supp 462 (M.D. Ala. 1995)(supervisory defendants were not liable for teacher's sexual abuse of school children on theory that they did not have adequate sexual abuse policy and training or theory that they failed to supervise subordinate).

In addition to their substantive due process claim, the plaintiffs have stated a procedural due process claim based on Ala. Code, Title 44, Chp. 1 and published DYS and Chalkville Campus policies and procedures, claiming these statutes and regulations created a legitimate claim of entitlement enforceable in federal court under the holding in *Board of Regents v. Roth*, 408 U.S. 564 (1972). Complaint, ¶ 54-59 (relating to plaintiff Lakeisha Byrd and restated as to each named plaintiff), Ex. 8, 9.[4] *See Taylor*, 818 F.2d at 793, 798-800.

The essence of Plaintiffs' procedural due process claim is that Barbee and the other supervisory defendants knew about widespread sexual abuse of incarcerated female students at Chalkville Campus and failed to act to prevent the abuse, without due process of law and contrary to Alabama law and DYS regulations which provide, *inter alia,* that the Department has a duty to "protect" the inmates (Ala. Code § 44-1-2) and to maintain written procedures to insure compliance with the department policy of protecting

---

[4]Substantive due process rights are rights held to be so fundamental that a state may not take them away, such as marriage, abortion, privacy, and safety and physical movement. Procedural due process claims involve expectations created by state law which can be taken away through due process of law. *Taylor*, 818 F.2d at 794.

students from physical abuse, corporal punishment, personal injury, disease, property damage and harassment. (Policy No. 13.8 (1996), Complaint, Ex. 9.

Barbee asserts that Title 44 sets out duties for DYS, the superintendent, and the director, but does not set out any duties for him, as principal of Chalkville Campus. He further maintains that the DYS policies and procedures upon which the plaintiffs rely establish only general guidelines for all DYS personnel to observe but create no entitlement of which he, as principal of Chalkville Campus, could have deprived them. Therefore, Barbee contends, he had no responsibility to act under these statutes and regulations and the plaintiffs have not stated a procedural due process claim as to him.

In *Taylor*, the Eleventh Circuit recognized a *Roth*-type claim against individual defendants who were not specifically charged with duties under the statute at issue, leaving to the district court, presumably as a factual matter, to make all determinations regarding the scope of authority and extent of duties of the appellees. *Taylor*, 818 F.2d at 800, n. 10. The regulations at issue here similarly include duties which might be delegated

Page 20 of 37

by the agency to the principal of the Chalkville Campus school. Should the evidence show, in fact, that Barbee had no state-imposed responsibility regarding the plaintiffs' safety during their incarceration at Chalkville Campus, he will be entitled to summary judgment as to the plaintiffs' procedural due process claims. He is not entitled to dismissal at this stage, however.

There is a significant degree of factual similarity between the claim brought by the *Taylor* plaintiff and the claims brought by the plaintiffs before this court. *See Vinyard,* 311 F.3d at 1346-52. The statutes were enacted and the regulations promulgated prior to the date the first plaintiff was incarcerated. Accordingly, the court finds the plaintiffs have adequately alleged a violation of procedural due process rights which were clearly established at the time of the violation. *See generally Hope v. Pelzer,* 536 U.S. 730 (2002).

### B.    Official Capacity Claims.

Barbee also contends the plaintiffs' claims against him in his official capacity are due to be dismissed. His arguments in this regard are identical and duplicative of the arguments advanced by defendant Wood in his motion

for summary judgment. In the interests of judicial economy, Barbee's and

Wood's claims will be discussed together, *infra*.

### III. The Wood/DYS Motions for Summary Judgment and Related Motion Under Rule 56(f).

Also before the court is a motion for summary judgment and renewed

motion for summary judgment, filed by defendants Walter Wood and DYS.

[Docs. 159, 225]. In addition to their response, the plaintiffs filed a motion

and affidavit under Rule 56(f) which the court will consider first. [Docs.

182, 235, Ex. C].

### A. The Rule 56(f) Motion.

Rule 56(f) of the Federal Rules of Civil Procedure provides, in

pertinent part:

> Should it appear from the affidavits of a party opposing the
> [summary judgment] motion that the party cannot for reasons
> stated present by affidavit facts essential to justify the party's
> opposition, the court may refuse the application for judgment
> or may order a continuance to permit affidavits to be obtained
> or depositions to be taken or discovery to be had or may make
> such other order as is just.

*Id.* The Rule 56(f) motion is well-taken, since this case has not advanced past the pleading stage and most, if not all, of the documentary evidence applicable to the claims is still in the hands of the defendants.

However, the defense of qualified immunity raised by defendant Wood should be considered as soon as possible, "preferably at the motion to dismiss or summary judgment stage of the litigation." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002). Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Cottone v. Jenne*, 326 F.3d 1352, 1357-58 (11th Cir. 2003).

In light of these competing considerations, and recognizing that the court "may make such other orders as is just" under Rule 56(f), the court will limit its analysis of the summary judgment motion by applying the law to the facts as pled in the complaint.

> A motion for summary judgment may be made solely on the basis of the complaint, in which case the motion is to be treated as the functional equivalent of a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). 6 J. Moore, Moore's Federal Practice ¶ 56.11[2] (2d ed. 1982). In this posture, the court must construe the complaint liberally in favor of the

Page 23 of 37

plaintiff, taking the facts as alleged as true.  The motion should
be denied if a claim has been pleaded.

*Blum v. Morgan Guar. Trust Co.*, 709 F.2d 1463, 1465 (11th Cir. 1983).

### B.    The 42 U.S.C. § 1983 Claims Against DYS Executive Director Walter Wood.

Wood argues he is entitled to summary judgment because he was not

hired as Executive Director of DYS until July 19, 1999, and no plaintiff

except Seitz was incarcerated at Chalkville after that date.  The court

cannot consider this factual argument based on the standard set out above.

However, other than Seitz, only Crystal Lewis purports to assert a claim

against Wood.  Restated and Amended Complaint, Doc. 211 (hereinafter,

"Complaint"), ¶ 15.  Crystal Lewis claims she was incarcerated at Chalkville

from October 27, 1998 to June 15, 1999, and that she was re-incarcerated

in 2001.  She has not alleged that Wood was a DYS employee at the time of

her abuse, which she alleges occurred during her first incarceration.

Complaint, ¶¶ 144-162.  Accordingly, Crystal Lewis's claim against Wood is

due to be dismissed on qualified immunity grounds.

The only plaintiff left asserting a claim against Wood is Angelica Seitz. Wood claims he was acting within his discretionary authority and is entitled to qualified immunity as to her claims.

Ms. Seitz avers that she was incarcerated at the DYS Chalkville Campus from September 12, 2000, to about June 12, 2001. She was about 15 years of age during her incarceration. Ms. Seitz claims that, while she was at Chalkville Campus, she was raped and repeatedly sexually abused by Chalkville Campus security guard John Zeigler. She claims that she reported the abuse despite Zeigler's threats, and she reported that Zeigler continued his threats after he was removed from campus in May of 2001 due to complaints to the police. Seitz claims Wood was the executive director of DYS at the time of her incarceration.

As executive director, Wood was directly or indirectly responsible for the appointment and supervision of DYS employees. Ala. Code §§ 44-1-21,-24 (1975). As discussed above, the plaintiffs collectively claim the DYS supervisory defendants, including Woods, had actual or constructive knowledge of their subordinate employees' widespread, long-standing and ongoing pattern of sexually abusing, assaulting, molesting and harassing the

involuntarily confined female juvenile students at least since October 7,

1997, the date a named plaintiff was first committed to the Chalkville

Campus. Complaint, ¶¶ 26, 47, 50-53. As such, Seitz's § 1983 claims against

Wood are identical to the § 1983 claims asserted against Barbee.   As

discussed above, the supervisory defendants are not entitled to qualified

immunity at this stage since the plaintiffs, including Seitz, have alleged the

supervisory defendants deprived them of a clearly-established constitutional

right.

Wood argues that no plaintiff claims to have reported sexual abuse

directly to him and the geographical distance between his Mt. Meigs

headquarters and the Chalkville facility make it "highly unlikely that he

observed or participated" in the alleged acts. This factual issue cannot be

appropriately considered at this juncture.  It is sufficient for now that the

plaintiffs aver the abuse was so widespread and rampant that the

supervisory defendants must have known.  The plaintiffs are entitled to

discovery on this issue and dismissal of the claims at this stage would be premature.[5]

## C.    The Title IX Claims Against DYS.

DYS is a state agency under Ala. Code § 44-1-20 (1975), and is entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution and Art. I, § 14 of the Alabama Constitution.  DYS argues the Title IX claims are due to be dismissed because Alabama has not waived its sovereign immunity and Congress did not have the authority to abrogate the state's Eleventh Amendment immunity under Title IX, 20 U.S.C. § 1681.[6]

---

[5]Also as discussed above, in the context of Barbee's motion to dismiss, the plaintiffs are not proceeding under a negligence, *respondeat superior* or otherwise faulty supervisory liability theory.

[6]The Eleventh Amendment is a complete bar to lawsuits against a state or state agency regardless of the nature of the relief sought. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)(monetary relief); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)(injunctive relief).  The plaintiffs have not pursued Section 1983 claims against DYS in the Restated and Amended Complaint of August 14, 2003, and the only claims pending against DYS, therefore, are pursuant to Title IX.  Sovereign immunity can be abrogated if (1) Congress unequivocally expressed its intent to abrogate immunity for the actions in question;  and (2) acted pursuant to a valid exercise of power under Section 5 of the Fourteenth Amendment.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). DYS does not dispute that Congress unequivocally expressed its intent to abrogate immunity in Title IX, but argues that, because Title IX was enacted pursuant to Congress's authority under the Spending Clause, Art. I, § 8, cl. 1, rather than its authority under Section 5 of the Fourteenth Amendment, Congress did not have constitutional authority to abrogate sovereign immunity for Title IX claims.  *Davis v. Monroe Co. Bd. of Educ.*, 120 F.3d 1390, 1397-99 (11th Cir. 1997)(en banc), *rev'd on other grounds*, 526 U.S. 629 (1999); *Franklin v. Gwinnett Co. Public Schools*, 911 F.2d

On September 11, 2003, the Eleventh Circuit held that, in 42 U.S.C. §

2000d-7, Congress unambiguously conditioned the receipt of federal funds

on a waiver of Eleventh Amendment immunity. *Garrett v. University of*

*Alabama at Birmingham,* 344 F.3d 1288 (11th Cir. 2003).  Although the

claims at issue in *Garrett* were brought under the Rehabilitation Act, Section

2000d-7 applies equally to claims under Title IX of the Education

Amendments of 1972.   (20 U.S.C. § 1681 et seq.)[7] Accordingly, DYS's

Eleventh Amendment immunity is waived as to the plaintiffs' Title IX claims.

DYS also argues the Title IX claims fail on the merits because no

appropriate DYS official had actual knowledge of the alleged abuse.   A

damages remedy will not lie under Title IX unless an official who at a

---

617, 622 (11th Cir. 1990), *rev'd on other grounds*, 503 U.S. 60 (1992).  Because the Eleventh Circuit has concluded that state agencies, such as DYS, waived sovereign immunity under Title IX, the court need not address the abrogation argument.

[7]Section 2000d-7 provides:
A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794], title IX of the Education Amendments of 1972 [20 U.S.C. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. § 6101 et seq.] title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's program and fails adequately to respond. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).   The plaintiffs have alleged that certain DYS officials had actual notice of the sexual abuse of students at Chalkville Campus.   If they fail to adduce sufficient proof of their allegation after they have had an opportunity for discovery, DYS may move for summary judgment on the claim.

### D.     The Official Capacity Claims Against Wood and Barbee.

The official capacity claims against Wood and Barbee are limited to plaintiffs' request for declaratory and injunctive relief.   They claim:

> All of the aforesaid named defendants are sued in their personal capacities.   In addition, defendants Wood, Caldwell and Barbee are sued in their official capacities with regard to plaintiffs' claims for declaratory and prospective injunctive relief as hereinafter set forth.

Complaint, ¶ 17.   Barbee and Wood contend the plaintiffs do not have standing to pursue their claims for declaratory and prospective injunctive

relief because they are no longer incarcerated at Chalkville Campus and are too old to ever again be incarcerated at Chalkville.[8] The court agrees.

All the plaintiffs except Angelica Seitz are over 21 years of age[9] and are no longer subject to the jurisdiction of the Alabama juvenile court. Ala. Code § 12-15-32.[10] Seitz is under the age of 21 and the juvenile court

---

[8]The defendants also argue the plaintiffs' official capacity claims must be dismissed because they are duplicative of the claims against DYS, citing *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991). *Busby* is inapposite because the plaintiff there was attempting to bring an official capacity Section 1983 suit against a municipal officer and a direct Section 1983 suit against a municipality. Here, the plaintiffs are asserting Title IX claims against DYS and Section 1983 claims against the defendants in their official capacity. Therefore the claims are not redundant. The defendants also argue the plaintiffs are seeking an unlawful and unenforceable "obey the law" injunction. That question is pretermitted by the court's conclusion that the plaintiffs lack standing to bring their claims for injunctive relief.

[9]Lakeisha Byrd was born on June 10, 1981. Complaint ¶ 24. Lashanda Campbell was born on March 24, 1981. Complaint ¶ 72. Milika Wilder Douglas was born on May 5, 1982. Complaint ¶ 94. Cananairo Dozier was born on October 9, 1981. Complaint ¶ 129. Crystal Lewis was born on June 6, 1981. Complaint ¶ 145. Valerie McNatt was born on March 23, 1981. Complaint ¶ 164. Nadia Rover was born on July 9, 1981. Complaint ¶ 176. Angelica Seitz was born on August 7, 1985. Complaint ¶ 189.

[10]That section provides in pertinent part:
. . . jurisdiction obtained by the court in the case of a child shall be retained by it until the child becomes 21 years of age unless terminated prior thereto by order of the judge of the juvenile court. This section shall not be construed to affect the jurisdiction of other courts over offenses committed by the child after he reaches the age of 18 years.

*Id.*

apparently retains jurisdiction over her. *Id.*[11]   However, Seitz admits she was released from DYS custody on July 18, 2001, and does not claim that she is presently incarcerated or will be incarcerated at Chalkville Campus in the future.   Complaint ¶ 205.

At an "irreducible minimum" a plaintiff seeking to proceed in federal court must show (1) she has suffered an "injury-in-fact"; (2) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) that it is likely rather than speculative that the injury will be redressed by a favorable decision. *Wooden v. Bd. of Regents*, 247 F.3d 1262, 1273-4 (11th Cir. 2001).  A plaintiff who has standing to bring a damages claim does not necessarily have standing to litigate a claim for injunctive relief arising from the same set of operative facts.  *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir. 1987).   To obtain prospective injunctive relief, a plaintiff must show she faces a substantial likelihood of injury in the future.  *Wooden,* 247 F.3d at 1284.  The fact that others may

---

[11]Despite being subject to the jurisdiction of the juvenile court, it is possible that Seitz is no longer subject to incarceration as a juvenile by DYS. *See Tucker v. Phyfer*, 819 F.2d 1030, 1032 (11th cir. 1987). However, Barbee and Wood have made no attempt to show there is a legal impediment which conclusively prevents Seitz from being subject to incarceration at Chalkville Campus in the future.

be exposed to the defendant's conduct in the future is not sufficient for a plaintiff to obtain prospective relief that will not benefit her in conjunction with her individual claim. *Id.* at 1285, *citing City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

Applying this reasoning, these plaintiffs, including Seitz, lack standing to seek prospective injunctive relief. Byrd, Campbell, Douglas, Dozier, Lewis, McNatt, and Rover will never again, under Alabama law, be subject to incarceration at Chalkville Campus. While Seitz is subject to juvenile court jurisdiction until age 21, she is not presently incarcerated at Chalkville Campus and does not claim she will be incarcerated there at any time in the future. Like the plaintiff in *Lyons*, she cannot show a sufficient likelihood she will be affected by similar conduct by DYS employees in the future. *Wooden*, 247 F.3d at 1284-5.

The plaintiffs contend that their claims for injunctive relief should not be dismissed because they are "capable of repetition, yet evading review," citing *Gerstein v. Pugh*, 420 U.S. 103,110 n. 11 (1975). However, "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing

that he will again be subjected to the alleged illegality." *Lyons*, 469 U.S.

at 109. *See Tucker*, 819 F.2d at 1035 ("[m]oreover, Tucker's claim [of

unconstitutional conditions of juvenile confinement under the eighth and

fourteenth amendments] is not 'capable of repetition, yet evading review';

indeed, the existence of appellant Melvin P. indicates that other potential

plaintiffs exist who would have standing. . .").

    *Tucker* is also dispositive of the plaintiffs' request for a declaration

> "that the policies, practices, procedures, conditions and
> customs of the defendant DYS (Title IX claims only) and the
> supervisory defendants and non-defendant supervisory personnel
> in their official capacities only violated the rights of plaintiffs as
> secured by Title IX, § 1983, the Fourteenth and Eighth
> Amendments and, as to Seitz, the supplemental state-law
> claims."

Complaint, ¶ 224. The *Tucker* court said:

> . . . [Tucker] was seeking a court declaration that his
> constitutional rights had been violated while he was in the jail
> as a juvenile. This argument, which would render any past
> illegal conduct subject to a declaratory judgment, is
> insupportable because even a favorable ruling would be of no
> benefit to him. Under 28 U.S.C. § 2201 (1982 and Supp.III 1985),
> a plaintiff seeking a declaratory judgment must have an "actual
> controversy" with the defendant. In the present case, because
> Tucker has reached majority age, he cannot again be subject as
> a juvenile to the conditions he condemns. Thus, '[a] declaration
> that [the defendants'] past conduct violated [Tucker's]

constitutional rights . . . "would [be] nothing more than a gratutitous comment without any force or effect."

*Tucker*, 819 F.2d at 1035, n.7 (changes in original, citations omitted).

Accordingly, the plaintiffs' claims for injunctive and declaratory relief will be dismissed.

### E.   The State Claims.

Wood claims he is entitled to sovereign immunity under Art. I, § 14 of the Alabama Constitution as to Seitz's state law claims against him in his official capacity, and state agency immunity as to Seitz's state law claims against him in his individual capacity. *See Doe v. Alabama Department of Youth Services,* 2003 WL 22320936 (Ala. Oct. 10, 2003). Seitz's state law claims are asserted only against defendant Zeigler in the Restated and Amended Complaint. Complaint, Counts 17, 18 and 19. Accordingly, these arguments are moot.[12]

---

[12]Barbee included this challenge in his motion to dismiss [Doc. 231], but failed to address it in brief. His argument is also moot, since the state law claims have only been asserted against Zeigler by Seitz.

## F.    Punitive Damages.

DYS, Wood and Barbee contend that punitive damages are not recoverable against DYS and against Wood and Barbee in their official capacities, citing *Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) and *Colvin v. McDougall,* 62 F.3d 1316, 1319 (11th Cir. 1995).[13]  The plaintiffs have not responded to this argument.  However, the only official capacity claims brought against Wood and Barbee are for injunctive and declaratory relief, as discussed above.[14]  Therefore, the argument is applicable only to the claims against DYS under Title IX.

*Newport* and *Colvin* discuss the application of punitive damages against a municipality in the context of Section 1983, but do not address claims brought under Title IX and DYS has not cited any authority or offered any argument supporting its contention that claims for punitive damages cannot be brought under Title IX.  However, it does not appear that punitive

---

[13]These defendants also deny they have been guilty of any conduct which entitles the plaintiffs to recover punitive damages.  That fact question cannot be addressed prior to discovery.

[14]These defendants were sued in their individual capacities under Section 1983 for punitive and compensatory damages.

Page 35 of 37

damages are available under Title IX.   In discussing the availability of punitive damages for claims under Title VI, the Supreme Court said:

> The same analogy applies, we think, in determining the scope of damages remedies. We said as much in *Gebser*: "Title IX's contractual nature has implications for our construction of the scope of available remedies." . . . One of these implications, we believe, is that a remedy is "appropriate relief," . . . only if the funding recipient is on notice that, by accepting federal funding, it exposes itself to liability of that nature. A funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract. Thus we have held that under Title IX, which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages, . . . and injunction, . . . forms of relief traditionally available in suits for breach of contract. . . . Like Title IX, Title VI mentions no remedies--indeed, it fails to mention even a private right of action (hence this Court's decision finding an implied right of action in Cannon ). But punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract, . . . . Nor (if such an interpretive technique were available) could an implied punitive damages provision reasonably be found in Title VI.  In sum, it must be concluded that Title VI funding recipients have not, merely by accepting funds, implicitly consented to liability for punitive damages . . . .

*Barnes v. Gorman,* 536 U.S. 181, 185-188 (2002)(analogizing remedy available under Title VI to remedies available under Title IX, and concluding punitive damages are not available).

Accordingly, the claims for punitive damages will be dismissed as to DYS and to Barbee and Wood in their official capacities.

## IV.   Conclusion.

A separate order in conformity with this opinion will be entered.

Done this  22ⁿᵈ  day of January 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE