# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

LASHANDA CAMPBELL, et al.,          ]
                                    ]
      Plaintiffs,                 ]
                                    ]
      vs.                         ]          CV-01-CO-1433-S
                                    ]
WALTER WOOD, et al.,                ]
                                    ]
      Defendants.                 ]

-------------------------------CONSOLIDATED WITH-------------------------------

ANGELICA SEITZ, et al.,             ]
                                    ]
      Plaintiffs,                 ]
                                    ]
      vs.                         ]          CV-01-CO-2156-S
                                    ]
ALABAMA DEPARTMENT OF               ]
YOUTH SERVICES, et al.,             ]
                                    ]
      Defendants.                 ]

## MEMORANDUM OF OPINION

I.      Introduction.

The Court has for consideration: (1) a motion for summary judgment

filed by the Alabama Department of Youth Services ("DYS") (Doc. 378); (2)

a motion for summary judgment filed by defendants Walter Wood, G. Wayne

Page 1 of  58

Booker, James Dupree, and John P. Rickicki (Doc. 380); (3) a motion for

summary judgment filed by defendants John Stewart and Jerrell Barbee

(Doc. 384); (4) a motion for summary judgment on the issue of equitable

tolling filed by defendants Booker, Dupree, and Rickicki (Doc. 388); (5) a

motion for summary judgment filed by defendant James Caldwell (Doc. 389);

(6) Plaintiffs' motion to strike document # 388 (Doc. 418); (7) a request for

oral argument filed by the plaintiffs (Doc. 453); (8) a motion for oral

argument filed by defendants Stewart and Barbee (Doc. 455); (9) a motion

filed by defendant Caldwell to strike/exclude portions of Dr. Marianne G.

Rosenzweig's declaration (Doc. 462); (10) a motion filed by defendant

Caldwell to strike any unauthenticated evidence (Doc. 463); (11) a motion

by DYS, Wood, Dupree, Rickicki, and Booker for leave to file supplemental

evidence (Doc. 478); (12) a motion filed by defendant Caldwell to

strike/exclude testimony of Anne Nelsen (Doc. 479); (13) a motion filed by

defendant Caldwell to strike/exclude psychological impact testimony (Doc.

480); (14) a motion filed by defendant Caldwell to strike/exclude testimony

of Dr. Alvin Cohn (Doc. 481); (15) a motion filed by defendants Stewart and

Barbee to exclude portions of Plaintiffs' evidence and additional statements

of fact (Doc. 489); (16) Plaintiffs' motion to strike portions of document # 460 (Doc. 492); (17) Plaintiffs' motion to strike portions of document # 471 (Doc. 494); and (18) Plaintiffs' motion to strike  document # 515 (Doc. 516). These motions are now ripe for decision.[1]

_____

[1]In order to clarify the voluminous record, correct mistakes made by parties new to the electronic filing system, and ensure that this Court considered all appropriate documents at summary judgment, the Court required the parties to file a simple list of all final documents submitted in support of, or opposition to, summary judgment. The Court informed the parties that all documents not included on these lists would be stricken from the record and not considered at summary judgment. (Doc. 505.)  (This order did not apply to evidentiary submissions.)  The following documents were included on the parties' lists:

-Defendants Barbee and Stewart (Doc. 506): 384, 385 (evidence), 386, 387, 454, 455, 457, 464, 465, 466, 467, 485, 489;

-Defendants DYS, Wood, Dupree, Rickicki, and Booker (Doc. 513): 378, 379, 380, 381, 382, 383, 388, 420, 421, 458, 468, 470, 471, 474, 475, 476, 477, 478;

-Defendant Caldwell (Doc. 508): 389, 390, 391 (evidence), 392 (evidence), 393, 459, 460, 461, 462, 463, 479, 480, 481, 495; and

-Plaintiffs (Doc. 509): 418, 422, 423, 424, 426, 427, 428, 429 ("447" in this opinion because Doc. 447 replaced 429), 430 ("438 at Ex. 2" in this opinion because the exhibit replaced 430), 431, 432, 434, 437 (evidence), 438, 440 (evidence), 441 (evidence), 442 (evidence), 443 (evidence), 446, 452, 453, 482, 483, 484, 492, 494.

Therefore, after reviewing the record, Documents # 376, 377, 394, 425, 445, 447, 448, 469, and 511 are deemed STRICKEN and will not be considered in this opinion.  Document # 516 was filed after the Court's order.

To the extent the parties' motions or briefs attempt to "incorporate" or "adopt" arguments and/or evidence in documents that are not included on the above-referenced lists (*see e.g.*, Docs. 378 at 1-2; 379 at 1-2; 384 at 3; 431 at 24), such references are STRICKEN and will not be considered.  These attempts to incorporate argument from other documents violate the Court's page limits on summary judgment briefs.  (Doc. 244.)

To the extent the parties' *motions* for summary judgment include legal argument not included in their briefs or memorandums of law (*see e.g.*, Docs. 378-79, 380-81), such argument is STRICKEN and will not be considered.  This also violates the Court's page limits on summary judgment briefs.

Further, the Court notes that Documents # 465, 475, 476, and 485 were included

Upon due consideration and for the reasons stated herein:

(1) the motion for summary judgment filed by DYS (Doc. 378) will be denied;

(2) the motion for summary judgment filed by defendants Wood, Booker, Dupree, and Rickicki (Doc. 380) will be granted as to Plaintiffs' remaining claims against Wood, and is moot as to all other defendants;

(3) the motion for summary judgment filed by defendants Stewart and Barbee (Doc. 384) will be granted;

(4) the motion for summary judgment on the issue of equitable tolling filed by defendants Booker, Dupree, and Rickicki (Doc. 388) will be granted;

(5) the motion for summary judgment filed by defendant Caldwell (Doc. 389) will be granted as to Plaintiffs' official capacity claims under § 1983, but denied as to the individual capacity claims;

(6) Plaintiffs' motion to strike document # 388 (Doc. 418) will be denied;

---

on the lists referenced above.  However, these four motions were previously DENIED on April 18, 2005, for failure to comply with the Court's initial order and were not refiled. (Doc. 488.)

(7) Plaintiffs' request for oral argument (Doc. 453) will be denied;

(8) the motion for oral argument filed by Stewart and Barbee (Doc. 455) will be denied;

(9) Caldwell's motion to strike/exclude portions of Dr. Marianne G. Rosenzweig's declaration (Doc. 462) will be denied as moot;

(10) Caldwell's motion to strike unauthenticated evidence (Doc. 463) will be denied;

(11) the motion filed by DYS, Wood, Dupree, Rickicki, and Booker for leave to file supplemental evidence (Doc. 478) will be denied;

(12) Caldwell's motion to strike/exclude the testimony of Anne Nelsen (Doc. 479) will be denied as moot;

(13) Caldwell's motion to strike/exclude psychological impact testimony (Doc. 480) will be denied as moot;

(14) Caldwell's motion to strike/exclude the testimony of Dr. Alvin Cohn (Doc. 481) will be denied as moot;

(15) Stewart and Barbee's motion to exclude portions of Plaintiffs' evidence and additional statements of fact (Doc. 489) will be denied as moot;

(16) Plaintiffs' motion to strike portions of document # 460 (Doc. 492) will be granted in part and denied in part;

(17) Plaintiffs' motion to strike portions of document # 471 (Doc. 494) will be granted in part and denied in part; and

(18) Plaintiffs motion to strike Defendants' motion to supplement the summary judgment record and for attorney's fees (Doc. 516) will be denied, but Defendants' request to use the additional witness statements (Doc. 515) is also denied.

## II.   Background.

The plaintiffs in this action are young women who, prior to age eighteen, were involuntary committed to the residential juvenile detention facility known as Chalkville Campus ("Chalkville"), which was under the authority and control of DYS and includes the Sequoya School.  (Doc. 211 at ¶ 6.)  Plaintiffs allege that they were raped and/or otherwise physically and sexually abused by various DYS employees while they were incarcerated at Chalkville.  (*Id*. at ¶ 23.)  They have asserted Title IX claims against DYS and constitutional claims under 42 U.S.C. § 1983 against DYS employees who allegedly committed the abuse and against DYS supervisors.  (*Id*. ¶ 5.)

III.    Oral Argument.

Defendants Barbee and Stewart filed a motion for oral argument on their motion for summary judgment and subsequent submissions (Doc. 455), and Plaintiffs have also requested oral argument.  (Doc. 453.)  The parties' written briefs were adequate, and the Court does not require additional argument.  Therefore, Defendants' motion and Plaintiff's request will be denied.

IV.    Motions Regarding Evidence and Statements of Fact.

The parties to this action have filed numerous motions to strike and/or exclude portions of the opposition's evidentiary submissions and/or responsive statements of fact, as well as motions to file additional evidence. The Court will address each motion in turn:

First, defendant Caldwell filed motions to strike or exclude portions of Dr. Marianne G. Rosenzweig's declaration (Doc. 462), the testimony of Anne Nelsen (Doc. 479), the psychological impact testimony of Dr. Steven Kaczor and Dr. Bruce Perry (Doc. 480), and the testimony of Dr. Alvin Cohn (Doc. 481) as inappropriate expert testimony.   None of these statements were relevant to the Court's conclusions regarding the merits of Mr.

Caldwell's motion for summary judgment.  Therefore, the motions to strike will be denied as moot.

Defendant Caldwell also moved to strike "any unauthenticated evidence on summary judgment, and . . . such evidence that is incapable of authentication at trial."  (Doc. 463.)  Plaintiffs have filed 284 evidentiary exhibits in support of their oppositions to Defendants' motions for summary judgment.  (Docs. 437, 440-43.)  Mr. Caldwell failed to indicate with any specificity which of these exhibits he opposes and wishes to strike.  As a result, Plaintiffs are precluded from making an effective argument that particular documents can, in fact, be authenticated or reduced to admissible form at trial.  *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).  Regardless, the materiality and the potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process, and immaterial evidence and evidence that could not be reduced to admissible form was not considered by this Court when it made its final decision on Mr. Caldwell's summary judgment motion.  For these reasons, his motion to strike will be denied.

Defendants DYS, Wood, Dupree, Rickicki, and Booker filed a motion for

leave to submit additional evidence in response to Plaintiffs' statements of fact.  (Doc. 478.)  In the Court's modified initial order, entered on February 11, 2004, the parties were informed that those moving for summary judgment may not include additional evidentiary materials in their replies to a non-movant's statements of fact.  (Doc. 244 at IX(B)(1)(c).)  In addition, Defendants have failed to establish that this proposed evidence pertains to facts that are material to the Court's determination at summary judgment. Rather, Defendants argue that the evidence would "provide this Court with the 'full picture'" regarding *all* of Plaintiffs' statements of fact.  (Doc. 478 at 2.)  Such a submission is burdensome and unnecessary.  Therefore, this motion will be denied.

Defendants DYS, Wood, Dupree, Rickicki, and Booker objected to, and moved to strike, "various portions" of Plaintiffs' Statement of Facts.  (Doc. 477.)  Defendants argue that "numerous allegations" are "mischaracterized and/or misleading," and Plaintiffs have included references to physical and/or verbal abuse that are not relevant to their claims of sexual abuse and harassment in this case.  (*Id.* at 3.)  These are, in essence, arguments that particular facts alleged by the plaintiffs (which these defendants do not

cite with any specificity) are disputed and/or not material.  It is a defendant's burden at summary judgment to show that there is no dispute of material fact, and that he/she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The Court will not examine each of the plaintiffs' 637 facts and strike facts simply because Defendants contend that they are in dispute or not material.  If a fact was not material or had no evidentiary foundation, it was not considered by this Court in its determinations at summary judgment.  Therefore, this motion will be denied.

Defendants Barbee and Stewart also filed a motion to exclude portions of Plaintiffs' Statement of Facts.  (Docs. 485, 489.)  Because the Court has granted summary judgment in favor of these defendants, this motion will be denied as moot.

Plaintiffs have filed a motion to strike portions of the responses to facts filed by DYS, Wood, Dupree, Rickicki, Booker (Doc. 494), and Caldwell (Doc. 492).  Plaintiffs argue that the defendants have not complied with the Court's initial order, which required that responses consist of "either the single word 'Admitted,' the single word 'Disputed,' or a short explanatory phrase such as 'Admitted but not material' or 'Admitted but context

clarified in brief,'" and ordered the opposing party to include a citation for every sentence in its response to disputed facts. (Doc. 244 at IX(B)(1)(b)-(c).) The Court made clear that "[c]olor words, argument and subtle inferences *will* be reserved for the argument portion of counsel's brief." (*Id*. at IX(B)(1).) It is evident that both sides did not fully comply with the Court's order in their statements of fact and responses. To the extent any party's response to a statement of fact includes legal argument or additional facts, such argument or additional facts are stricken as a violation of this Court's order. However, to the extent Plaintiffs seek to strike all of the defendants' responses that dispute their facts without citing to the record, their motion will be denied. A defendant may dispute a fact as not material, out of context, or a misstatement without additional citation. When the Court utilized the parties' statements of fact, it took into consideration whether the fact was admitted or disputed, and checked all facts against the record. Immaterial facts, disputed facts that did not match the record, and extraneous arguments were not considered in the Court's determinations.

Lastly, Plaintiffs have filed a motion to strike a defense "motion" to

supplement the summary judgment record with the statements of two witnesses.  (Doc. 516 at 5.)  Plaintiffs also request attorney's fees.  (*Id*. at 2.)  The "motion" Plaintiffs seek to strike was filed by defendants DYS, Wood, Dupree, Rickicki, and Booker as a "show of good cause in response to this Court's June 15, 2005 order," and is not in the form of a motion.  (Doc. 515.)  On June 15, 2005, this Court granted the defendants' motion to supplement their Rule 26 disclosures out of time, but noted certain limitations.  (Doc. 503.)  The Court emphasized that summary judgment motions were ripe for consideration and no new evidence would be considered without a showing of good cause.[2]  (*Id*.)  Defendants assert in their "show of good cause" that the two witnesses could not have been found before discovery ended, and that they will be "unduly prejudiced" if they are not allowed to submit evidence that "Plaintiff Crystal Lewis has provided false testimony of allegations of sexual abuse."  (Doc. 515 at 2, 8.)

Plaintiffs' motion to strike a "motion," is due to be denied, and their motion for attorney's fees is denied.  However, the defendants' "request" to supplement the summary judgment record with additional witness

---

[2]The Court reserved ruling on whether the evidence could be used at trial.  (Doc. 503.)

statements to show a plaintiff is lying will also be denied.  Defendants have

not established good cause for the late submission, and even if the

statements were considered, these affidavits merely create disputes of fact

regarding the credibility of Plaintiff Lewis.

V.    Motions for Summary Judgment.

        Summary judgment is proper "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the evidence] which it believes demonstrate

the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting

evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support

of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

A.    Defendants Dupree, Rickicki, Booker, and Stewart.

Defendants Dupree, Rickicki, Booker, and Stewart argue that they are entitled to summary judgment on Plaintiffs' claims because Plaintiffs' cause is barred by the statute of limitations and is not subject to equitable tolling or equitable estoppel.  (Docs. 384, 388.)[3]  In their responsive submissions to

---

[3]Plaintiffs have filed a motion to strike the motion for summary judgment filed by defendants Booker, Rickicki, and Dupree as a violation of the Court's page limits on

the Court, Plaintiffs do not contest Defendants' assertion that the addition of Dupree, Rickicki, Booker, and Stewart occurred after the expiration of the applicable statute of limitations, and the Court agrees that these claims are time-barred[4] unless the limitations period is equitably tolled.  Plaintiffs contend that they have raised genuine issues of material fact that make summary judgment inappropriate on the issue of equitable tolling.

      1.    The Timeline.

Because dates are essential to the Court's analysis of the statute of limitations issue at hand, relevant facts are set forth in timeline format:

-January 14, 1997, through August of 1999:  Plaintiffs[5] are incarcerated at varying intervals at Chalkville Campus.

---

briefs.  (Doc. 418.)  Plaintiffs represented to this Court that they wanted an opportunity to address issues of equitable tolling and equitable estoppel when both sides agreed that Plaintiffs' claims do not "relate back" under Federal Rule of Civil Procedure 15(c).  (Doc. 312.)  Just as the Court granted Plaintiffs their opportunity to be heard by not dismissing defendants Booker, Rickicki, Dupree, and Stewart from this action in September of 2004, these defendants may also have their opportunity to be heard on the issue.  Therefore, the motion to strike will be denied.

    [4]*See infra* note 7 and accompanying text.

    [5] For the purposes of this Court's opinion and analysis on the statute of limitations issue, only the claims of plaintiffs LaShanda Campbell, Milika Wilder Douglas, Cananairo Dozier, Crystal Lewis (Bosworth), Valerie McNatt, and Nadia Rover are relevant.  Plaintiff Angelica Seitz has not added Dupree, Rickicki, Booker, and Stewart as party defendants.

-June 5, 2001:  The first plaintiffs in this case (not the current plaintiffs) file this lawsuit in federal court against DYS, Walter Wood, Gerald Barbee, James Caldwell, and fictitious party defendants.  They allege rape and/or physical and sexual abuse by DYS employees during their incarceration.  (Doc. 1.)

-June 22, 2001:  The first plaintiffs file an Amended Complaint, which does not add any new defendants.  (Doc. 7.)

-October 19, 2001:  Following a hearing, the Court strikes the Amended Complaint, gives the first plaintiffs thirty days to file a new complaint, and enters a scheduling order setting January 31, 2002, as the final deadline to join additional parties.  The deadline for initial disclosures is October 24, 2001.  (Docs. 20, 21.)

-November 9, 2001:  The first plaintiffs in this case file a motion to extend their time to file their amended complaint.  (Doc. 22.)

-November 14, 2001: The first plaintiffs serve their initial disclosures. (Doc. 388 at Ex. 6.)

-December 20, 2001:  The current plaintiffs are added to this action in the Third Amended Complaint.  The complaint also adds a number

of DYS employees and unknown "food vendors and medical care providers" as defendants.  (Doc. 29.)

-January 31, 2002:  The Court's deadline to add additional parties expires without a motion by either side to extend the time for filing.

-March 23, 2002:  The two-year statute of limitations for § 1983 claims expires for the oldest of the current plaintiffs:  Valerie McNatt (birthdate: March 23, 1981).[6]

-April 4, 2002:  The Court holds all remaining deadlines in abeyance pending its ruling on a number of motions, including motions to dismiss Plaintiffs' complaint.  The Court states that it will enter a new scheduling order.  (Doc. 69.)

-May 16, 2002:  Plaintiffs file a Fourth Amended Complaint; it does not add any new defendants.  (Doc. 79.)

-February 7, 2003, and February 14, 2003:  All plaintiffs except the current plaintiffs voluntarily dismiss their claims.

-March 7, 2003:  The Court gives the current plaintiffs until April 15, 2003, to file a "Final Amended Complaint"—adding no new claims,

---

[6]*See* discussion *infra* note 7.

parties, or factual allegations.  Plaintiffs are instructed merely to "clean up" their complaint.  (Doc. 130.)

-April 15, 2003:  Plaintiffs file a Fifth Amendment to the complaint. (Doc. 141.)

-May 5, 2003:  The two-year statute of limitations for § 1983 claims expires for the youngest of the plaintiffs:  Milika Wilder Douglas (birthdate: May 5, 1982).[7]

-June 17, 2003:  Following a status conference, the Court orders Defendants to produce Plaintiffs' student files within fourteen days. Plaintiffs are instructed to subsequently file a "Restated and Amended Complaint" naming all plaintiffs and defendants remaining in the case; however, no new parties or claims may be added.  (Doc. 205.)

---

[7]In § 1983 actions, the relevant statute of limitations is the applicable state personal injury statute. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985).  The Alabama statute of limitations for personal injury actions is two years.  1975 Ala. Code § 6-2-38(*l*); *Lufkin v. McCallum*, 956 F.2d 1104, 1106 n.2 (11th Cir. 1992).  When a cause of action accrues while the plaintiff is a minor, however, the limitations period is tolled until the plaintiff reaches the age of nineteen.  1975 Ala. Code § 6-2-8(a).  If Douglas' birthdate is May 5, 1982, as asserted in the Plaintiffs' Restated and Amended Consolidated Complaint, her statutory period expired on May 5, 2003.  The statutory periods for the remaining current plaintiffs expired on the following dates:  LaShanda Campbell: March 24, 2002 (birthdate: March 24, 1981); Cananairo Dozier: October 9, 2002 (birthdate: October 9, 1981); Crystal Lewis (Bosworth): June 6, 2002 (birthdate: June 6, 1981); Nadia Rover: July 9, 2002 (birthdate: July 9, 1981).

-August 14, 2003:  Current plaintiffs file a Restated and Amended Consolidated Complaint.  The complaint lists James Dupree, John P. Rickicki, and Wayne Booker as "Non-Party DYS Supervisory Employees or Officials Whose Actions or Inactions also Underlie the Claims Alleged Herein."  (Doc. 211.)

-April 14, 2004:  Following an in-court hearing and status conference, the Court enters a new scheduling order allowing the plaintiffs one day to file a motion adding new defendants.  (Doc. 255.)

-April 15, 2004:  Current plaintiffs make a motion for leave to amend their existing complaint to add four new supervisory defendants: James Dupree, John P. Rickicki, G. Wayne Booker, and John Stewart.

-May 13, 2004:  The Court grants the current plaintiffs' motion to amend, and Plaintiff's First Amended Restated and Amended Consolidated Complaint, including the four new defendants, is entered.

-June 3, 2004:  Defendants Dupree, Rickicki, and Booker move to dismiss Plaintiffs' First Amended Restated and Amended Consolidated Complaint as barred by the statute of limitations.  (Doc. 277.)

-June 17, 2004:  Defendant Stewart moves to dismiss Plaintiffs' First Amended Restated and Amended Consolidated Complaint as barred by the statute of limitations.  (Doc. 283.)

-September 8, 2004:  At an in-court hearing, all parties agree that Plaintiffs' claims against defendants Dupree, Rickicki, Booker, and Stewart do not relate back under Federal Rule of Civil Procedure 15(c).  Plaintiffs, however, allege that they may have an argument for equitable tolling and/or estoppel.   Therefore, the Court denies Defendants' motions to dismiss and informs the parties that the issue of equitable tolling or estoppel will be taken up at summary judgment. (Doc. 312.)

-December 29, 2004:  Defendants Dupree, Rickicki, Booker, and Stewart move for summary judgment on Plaintiffs' claims of equitable estoppel and/or tolling.  (Docs. 384, 388.)

    2.    Equitable Tolling or Etoppel.

"Generally, a [plaintiff] seeking equitable tolling bears the burden of establishing two elements:  (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her]

way." *Pace v. DiGuglielmo*, __ U.S. __, 125 S. Ct. 1807, 1814 (2005). "The plaintiff bears this burden because equitable tolling is an exception to the rule of the statute of limitations, not the rule itself." *Arce v. Garcia*, 400 F.3d 1340, 1347 (11th Cir. 2005). "Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore, should not be given grudging application. They protect important social interests in certainty, accuracy, and repose." *Id.* "On the other hand, these concerns may be outweighed when the interests of justice require that a plaintiff's rights be vindicated." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). Therefore, "courts, acting in their equitable capacity, will toll statutes of limitations, but 'only upon finding an inequitable event that prevented plaintiff's timely action.'" *Id.* (quoting Doran, Comment, 64 Wash. L. Rev. at 682.) "The Supreme Court has made [it] clear that tolling is an extraordinary remedy which should be extended only sparingly." *Id.* (citing *Irwin v. Veterans Admin.*, 498 U.S. 89, 96 (1990)).

In the Eleventh Circuit, an "inequitable" or "extraordinary" event may have occurred when: (1) "the defendant misleads [the plaintiff] into allowing the statutory period to lapse," (2) "[the plaintiff] has no reasonable

way of discovering the wrong perpetrated against her," or (3) "[the plaintiff] timely files a technically defective pleading." *Id.* Plaintiffs attempt to show that their circumstances were "inequitable" or "extraordinary" in three ways: (1) Plaintiffs were unable to determine that Dupree, Rickicki, Booker, and Stewart were proper defendants to this action until DYS belatedly produced Plaintiffs' student files in response to a Court order issued July 17, 2003; (2) discovery was "effectively stayed" from April 16, 2002, until April 14, 2004, during which time Plaintiffs could not learn about these four defendants' involvement in the case; and (3) other defendants in this action failed to provide their initial disclosures on October 24, 2001, as directed by the Court. (Docs. 422 at 21-23; 431 at 25-26.) In sum, Plaintiffs contend that they did not "know the level of involvement—or level of actual or constructive knowledge—of these defendants" in this case until the statute of limitations had expired on their claims. (Docs. 422 at 21; 431 at 25.)

Plaintiffs concede that they were aware of the names of these four defendants and their present or former positions with DYS and the Chalkville campus, but Plaintiffs argue that prior to examining the student files

produced by other defendants in late July or early August of 2003, Plaintiffs

"knew they had 'been injured but [were] unable to obtain evidence

necessary to determine [whether these defendants] were liable for [their]

injury.'" (Docs. 422 at 21-22; 431 at 25[8]) (quoting *White v. Cooper*, 55 F.

Supp. 2d 848, 855 (N.D. Ill. 1999)).  Plaintiffs assert that they "could have

guessed at  these Defendants' involvement . . . and sued these Defendants

simply because they may have been 'in office' at the time some of these

Plaintiffs were confined at Chalkville.  [However, b]ecause of the serious

and morally reprehensible nature of the ongoing pattern of sexual abuse at

issue in this case, and because Plaintiffs could not satisfy the requirements

of Fed. R. Civ. P. 11, Plaintiffs did not sue these Defendants based on

speculation." (Doc. 422 at 24.)

———————————————

[8]Plaintiffs' brief regarding defendant Stewart reads: "plaintiffs were *not* aware of this defendant's name and his present or former positions with Chalkville, *but*, until examination of the 'student files' was complete, plaintiffs did not know the level of involvement . . . ." (Doc. 431 at 25 (emphasis added).)  Reading the sentence in context, and taking into consideration the fact that the rest of Plaintiffs' argument discusses not being aware of the extent of Stewart's knowledge or involvement in this case, the  use of the first "not" appears to be a typographical error.  Regardless, this Court's conclusion is the same.  Plaintiffs have not pointed to any piece of evidence in the student files or documents subsequently obtained through discovery with information that could not have been reasonably obtained through public documents, public forums, or any other means at an earlier date, and without which the plaintiffs would have been unable to identify Mr. Stewart as a suitable defendant in this case.

Yet, Plaintiffs do not point to a single piece of evidence to support or validate their claim that any particular document(s) or item(s) in the student files was/were something (1) without which they would have been unable to sue the defendants, (2) that they had not known previously, and (3) could not have been reasonably obtained through public documents, public forums, or any other means.  Bare allegations that this unidentified information was essential to Plaintiffs' ability to sue Dupree, Rickicki, Booker, and Stewart, without more, do not create genuine issues of fact that will defeat a motion for summary judgment.

Plaintiffs also contend that discovery was "effectively stayed" in this case from April 16, 2002, until April 14, 2004, during which time the plaintiffs had "no opportunity to learn any more about the involvement of or knowledge by" Dupree, Rickicki, Booker, and Stewart.  (Docs. 422 at 23; 431 at 26.)[9]  Once again, however, Plaintiffs have only presented this Court with unsupported argument.  They have not pointed to any evidence that

---

[9]  Yet, Plaintiffs sought and obtained their student files in June of 2003, from which they say they obtained the evidence necessary to sue these four individuals. Plaintiffs admit they then included the names of these individuals in their "Restated and Amended Consolidated Complaint on August 14, 2003.  (Docs. 422 at 22; 431 at 25.)  What additional discovery did or did not occur after July or August of 2003 seems to be irrelevant to the issue of equitable tolling in this case.

the stay in discovery prevented them from obtaining information that was (1) necessary to determine that these four defendants were worthy of pursuing in civil litigation and (2) could not be reasonably obtained earlier through public documents, public forums, or some other means.  Bare allegations do not create genuine issues for trial.

Plaintiffs add that this "entire problem . . . 'could have been avoided had [other] defendants [in this case] complied with the Federal Rules of Civil Procedure,' and with this Court's order . . . directing the defendants to provide Plaintiffs their initial disclosures . . . not later than October 24, 2001."[10]  (Doc. 422 at 23; *see also* Doc. 431 at 25 n.12 and 26.)  "Such

---

[10]To the extent Plaintiffs assert that they are entitled to equitable *estoppel* because of *other* defendants' failure to timely file their initial disclosures (Docs. 432 at 2; 431 at 26.), their argument is baseless.  "Technically, the terms 'estoppel' and 'tolling' refer to distinct doctrines.  Estoppel is appropriate when the defendant's misconduct has in some way prevented the plaintiff from complying with the deadline at issue, while tolling arguments focus exclusively on whether the plaintiff acted with reasonable prudence.  Courts often use these terms interchangeably." *Baker v. Peters*, 145 F. Supp. 2d 1251, 1257 n.1 (M.D. Ala. 2000).  When a plaintiff alleges misconduct on the part of the defendant, "courts usually require some affirmative misconduct, such as deliberate concealment." *Arce v. Garcia*, 400 F.3d 1340, 1349 (11th Cir. 2005).  Plaintiffs appear to allege that other defendants deliberately concealed the names of  Dupree, Rickicki, Booker, and Stewart by failing to file their initial disclosures.  Plaintiffs have not presented any evidence of affirmative misconduct, but even if this Court assumed some of the defendants deliberately concealed the identities of other potential defendants, "the fact that other people or entities may have hindered the plaintiff is by itself insufficient to trigger equitable tolling [or estoppel]." *Id*. at 1348.  The misconduct must be on the part of Mr. Dupree, Rickicki, Booker, and Stewart—not other defendants in this case.  This Court cannot "estopp" particular individuals from asserting a valid defense

disclosures," state the plaintiffs, "if they included the information required, would have put Plaintiffs on notice that [these defendants] should be named as Defendants long before the first § 1983 two-year statute of limitations expired as to any of these Plaintiffs' claims."   (Doc. 422 at 23.)[11] Defendants served their initial disclosures less than one month later—on November 14, 2001—before the current plaintiffs joined the lawsuit.  (Doc. 388 at Ex. 6.)  In their disclosures, the defendants provided the names and addresses of a number of individuals they believed had personal knowledge in the case; the list of names does not include these four defendants.  (*Id.*) However, Plaintiffs admit they knew the names and positions of Dupree, Rickicki, Booker, and Stewart, and they do not dispute that these names and job titles were available to the public.  They fail to explain what they would have gained from a document including these four men's names and addresses.  In fact, if the listing of these four men's names and addresses in 2001 would have given Plaintiffs sufficient information to "ascertain that

_____

because of the alleged actions of others.

    [11]Plaintiffs allege that the "best evidence of the Plaintiff's position in this regard is the fact that the Supervisory Defendants, (Dupree, Rickicki, and Booker), are all listed on the Initial Disclosures filed with this Court on June 3, 2004."  (Doc. 422 at 24.)  No such disclosures were "filed" with this Court, and no "Exhibit B" was attached to Plaintiff's document.

[these defendants] were in a position of responsibility and liability" (Docs. 422 at 25; 431 at 25 n.12) making them worthy of suit, as Plaintiffs allege, then it is unclear to this Court exactly how Plaintiffs can also argue that they required additional knowledge regarding "the role played" by Dupree, Rickicki, Booker, and Stewart that could not be learned "until they received the plaintiffs' 'student files' and subsequent discovery materials" in 2003.

Plaintiffs have failed to produce any evidence that an extraordinary or inequitable circumstance prevented them from obtaining information necessary to bring suit against Dupree, Rickicki, Booker, and Stewart that could not be reasonably acquired or discovered by other available means. Yet, even if this Court assumed that Plaintiffs had met their burden of producing sufficient evidence of an extraordinary or inequitable circumstance, Plaintiffs have failed to establish that they meet the requirements for the second prong of equitable tolling: diligence.

Assuming Plaintiffs were unable to determine that Dupree, Rickicki, Booker, and Stewart were suitable defendants for this action until they obtained and reviewed the student files produced by other defendants in July or August of 2003, and assuming that this unidentified information

could not reasonably be acquired through other means, Plaintiffs have not shown that they pursued their rights diligently after July or August of 2003. "Equitable modification suspends a limitations period 'until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559, 1561 (11th Cir. 1987).  According to Plaintiffs, at the latest, they knew that these four men were possible defendants in July or August of 2003.  In fact, Plaintiffs acknowledge that they identified the men in their Restated and Amended Complaint on August 14, 2003.  (Doc. 422 at 22.)  Yet, Plaintiffs waited until April of 2004 to attempt to add these individuals as actual parties to this suit.  Admittedly, a Court order in July of 2003 ordered the plaintiffs to file an amended complaint in August that did not add any new parties or claims.  At that point, however, the statute of limitations had expired.[12]  (Doc. 422 at 22.) Plaintiffs did not notify the Court that they had obtained new information that made the addition of new defendants appropriate.  No motions to add

---

[12]Plaintiffs do not make any argument that a previous court order on March 7, 2003, prohibiting the addition of new parties before the statute of limitations had expired for all plaintiffs, is relevant to their claim of equitable tolling.

new defendants were filed.  No requests for extensions of time were made.

*See Justice v. United States*, 6 F.3d 1474, 1480 (11th Cir. 1993).  It was not

until April of 2004 that Plaintiffs indicated to the Court that they wished to

add new defendants, and, in response, the Court gave Plaintiffs one day to

do so.  (Docs. 255, 266.)

Throughout their briefs in response to summary judgment, Plaintiffs

point the finger at others for their failure to join these four men as

defendants within a proper time frame.  However, Plaintiffs never attempt

to explain to this Court how *their* actions demonstrate diligent preservation

of their rights in this case.  Without such a showing, equitable tolling is

inappropriate.  "One who fails to act diligently cannot invoke equitable

principles to excuse that lack of diligence." *Justice*, 6 F.3d at 1480 (quoting

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151-52 (1984)).

Therefore, defendants Dupree, Rickicki, Booker, and Stewart are entitled

to summary judgment on Plaintiffs' claims.

B.      Defendant DYS.

DYS argues that it is entitled to summary judgment on Plaintiffs'

claims because (1) Plaintiffs cannot show that an appropriate DYS official

had actual knowledge of its employees' alleged bad acts and responded in a clearly unreasonable manner, as required to establish a Title IX claim; (2) Plaintiffs cannot prevail on theories of agency, respondeat superior, or constructive notice under Title IX; (3) Plaintiffs cannot assert state law claims against DYS due to Eleventh Amendment immunity; (4) Plaintiffs cannot establish actual injuries in order to recover compensatory damages; and (5) Plaintiffs cannot recover punitive damages against DYS.  (Doc. 378.)

     1.    Title IX.

"Title IX provides, in pertinent part, that 'no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .'" *Davis v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1371 (11th Cir. 2000) (quoting 20 U.S.C. § 681(a)).[13]  A "Title IX plaintiff must establish two things to survive summary judgment in a cause of action against a school district like [DYS] for the discriminatory acts of its employees." *Floyd v. Waiters*, 171 F.3d 1264, 1264 (11th Cir.

_____

[13]"The Supreme Court has recognized an implied private cause of action for money damages in Title IX cases of intentional sexual discrimination." *Davis v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1371 (11th Cir. 2000)  (citing *Franklin v. Gwinett County Pub. Sch.*, 503 U.S. 60, 75 (1992)).

1999).  "First, some supervisor with authority to take corrective action was placed on notice of the bad conduct."  *Id.*  "Second, the supervisor possessing this authority was a school official high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct."  *Id.*[14]  DYS argues that the only official that meets these requirements is the Executive Director of DYS.  (Doc. 379 at 15-17.)  Plaintiff contends that several other individuals—including the Director of Institutional Services, the Superintendent of Chalkville, the Superintendent of Education, and the Principal of Sequoya School—satisfy the courts' definitions.  (Doc. 446 at 4-9.)

However, before deciding who *is* what, it may be prudent for the

---

[14]The Court notes that defendant DYS begins its brief in support of summary judgment with the Title IX standard outlined by the U.S. Supreme Court in *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999).  (Doc. 379 at 6.)  This standard includes an element requiring that harassment be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."  *Davis*, 526 U.S. at 650.  DYS proceeds to argue that Plaintiffs have not established this particular element of their Title IX claim.  (Doc. 379 at 26.)  However, as the Eleventh Circuit clarified in *Sauls v. Pierce County Sch. Dist.*, 399 F.3d 1279 (11th Cir. 2005), a showing of "sufficiently severe" harassment is an additional requirement for Title IX claims based on *student*-on-student sexual harassment.  *Id.* at 1284.  It does not apply to teacher-on-student or employee-on-student harassment claims.  *See id.*  Therefore, this element is not required and does not apply in this case.  *Id.* ("Because this case involves teacher-on-student harassment, Appellants need not establish [the teacher's] misconduct was 'so severe, pervasive, and objectively offensive' that it denied [the student] equal access to educational programs or opportunities.")

Court to first note some of the evidence Plaintiffs have provided with regard

to who *knew* what—and when.   On May 17, 1994, Mr. Caldwell wrote a

memorandum to defendant Zeigler, which states:

> On Monday, May 16, 1994, Jimmie Crocker and I met with you to discuss accusations made against you by several female students.   I read to you the accusations and you denied them. . . .
>
> I asked you if you had ever touched either student.  You said that you had not, other than to restrain them.  I asked if you had ever physically abused either student and you said that you had not.
>
> I made you aware that this is not the first time that accusations of this nature have come up about you and also noted that I had been told that you had a similar problem before transferring from Mt. Meigs. You said that you did not have any problems at Mt. Meigs.
>
> You were assured that Jimmie Crocker and I understand the difficulties of which you are confronted during your shift since you are the only Security Guard on duty.  However, we made you aware that it is imperative that students not be abused.  We encouraged you not to put yourself in a position where such accusations can surface. . . .
>
> [A]llow me to caution you to be discreet in your dealings with the students, *particularly the girls*.  Do not allow anything that you say or do to fall into a realm of impropriety and evolve into a critical situation.

(Doc. 437 at Ex. 112 (emphasis added).)  On August 18, 1995, Chalkville staff

member Anita Tate wrote the following in an incident report:

> On August 14, 1995, [a] mother called to say that she had heard that some of the male staff on Chalkville Campus were hav[ing] physical relationships with students.  I asked her to give me the names of the male staff, and to be more specific about the allegations.  She said that she would call me back and give me the names when she got them from our former students.  She said that she had been told this by several former students of Chalkville, as well as [by her daughter].[15]  She also told me that [another former student] had said the same thing.
>
> On August 17, 1995, [the mother] called me back, but I had left for the day.
>
> On August 18, 1995, I returned [the] mother's phone call around 9:55 a.m.  She told me the names of several male staff who supposedly had physical relations with the students on Chalkville Campus.  The names were Mr. Dowdell, *Mr. Zeigler*, Mr. Maye, *Mr. Mack*, and Mr. Toney.  *I informed Mr. Caldwell*, Mr. Crocker, and Mrs. Horn about the allegations.

(Doc. 437 at Ex. 126 (emphasis added).)  On March 7, 1997, Dr. Mark H.

Burge wrote a memorandum to Mr. Caldwell that stated:

> During an individual session with Fred Harris, Fred disclosed that he was aware of *staff members having sexual relations with female students*.  Fred did not indicate any particular staff or students and I did not ask him to elaborate.  I did encourage him to write a complaint form about any such incidents.  While I am aware of the unreliable nature of these reports, they are of such a serious nature that I felt I should make

_____

[15]The Court will refrain from mentioning the names of girls who are not parties to this action where possible in this opinion.

you aware of them.

(Doc. 440 at Ex. 156 (emphasis added).)  These are just three of many reports, memoranda, or complaints mentioning possible or actual sexual abuse of female students at Chalkville that were received or written by Mr. Caldwell.  The Court singled out these particular complaints because they (a) are dated either prior to the Plaintiffs' arrival at Chalkville or prior to the alleged instances of abuse, and (b) reference defendants Zeigler and Mack, individuals accused by six of the seven plaintiffs in this case.[16]

Plaintiffs have provided sufficient evidence at summary judgment to show that Mr. Caldwell had actual notice of bad conduct on the part of Chalkville employees prior to the alleged harassment and/or abuse of the plaintiffs in this case.  It is DYS's burden at summary judgment to establish

_____

[16]In its brief, DYS appears to argue that it needed to have actual notice of each alleged harasser's actions against each of the particular plaintiffs in this case.  (Doc. 379 at 10-15.)  However, the Supreme Court and Eleventh Circuit Court of Appeals have not been so specific.  *See e.g.*, *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1373 (11th Cir. 2000) (deciding that a complaint by another student was not "actual notice" of the possibility that an employee was sexually molesting the plaintiffs because the complaint was about a "slight touching in a football game"—not because it was a complaint by another student).  Plaintiffs have produced evidence that Mr. Caldwell had actual notice of allegations of possible sexual abuse by Mr. Zeigler and Mr. Mack, individuals accused by six of the seven plaintiffs.  These allegations, coupled with the sheer number of additional notices of possible misbehavior by unnamed or other employees, are sufficient at this stage to create an issue of fact as to whether DYS had adequate notice of the possibility that the remaining plaintiff (Ms. Dozier) was in danger of sexual abuse.

that Mr. Caldwell is not an "appropriate person" as a matter of law under Title IX.  DYS argues that Mr. Caldwell, as Superintendent of the DYS Chalkville Campus from October 20, 1990, until October 1, 2001, (Docs. 423 at 227; 471 at 33-34), is not an "appropriate person" under Title IX because "only the Executive Director may terminate or suspend a DYS employee." (Docs. 379 at 16; 468 at 3 ("James Caldwell, as the Superintendent of Chalkville, did not have this power.")).  However, this statement is not an accurate statement of the law.

When the U.S. Supreme Court defined the parameters of an implied damages remedy under Title IX, it decided that "because the express remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation, . . . [an] implied damages remedy should be fashioned along the same lines." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).  Therefore, an "'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.*  A "damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged

discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of the discrimination." *Id.*[17]

DYS argues that "corrective actions sufficient to remedy Title IX violations would be to either suspend or terminate an employee for his or her misconduct." (Doc. 379 at 16.)  Neither the Supreme Court nor the Eleventh Circuit Court of Appeals, however, have so narrowly defined "corrective measures." Other actions could, in fact, end harassment quite effectively in certain circumstances.  A supervisor could, for instance, instruct the employee never to be alone with the student or any other female student, or instruct *all* male employees that they may never be alone with a female student.  *See e.g.*, *Davis*, 233 F.3d at 1373-74.

Plaintiffs have provided evidence that Mr. Caldwell (a) managed all programs at the Chalkville Campus and was the "single administrative officer to whom all employees or units of management [at Chalkville] were responsible" (Doc. 437 at Ex. 8); (b) supervised, directed, and monitored the day-to-day activities of employees at Chalkville (Doc. 437 at Ex. 79); (c)

---

[17]Unfortunately, the appellate courts have not provided further details.  The Eleventh Circuit has left "for another day the task of delineating *Gebser*'s 'appropriate person.'" *Davis v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1372 n.6 (11th Cir. 2000).

insured compliance with State and Federal statutes, rules, and guidelines (Doc. 437 at Ex. 11 p. 101, Ex. 79); and (d) recommended personnel, legal, and other actions (Docs. 437 at Ex. 11 p. 197-99, Ex. 79).  This is sufficient evidence from which a reasonable jury could conclude that Mr. Caldwell was a DYS official who could take corrective action to end discrimination at Chalkville.  Mr. Caldwell reported to the Director of Institutional Services, who reported to the Executive Director of DYS.  (Doc. 471 at 34.)  A reasonable jury could also conclude, given the state-wide scope and organizational set-up of DYS, that Mr. Caldwell was "high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct."[18]  *Floyd v. Waiters*, 171 F.3d

---

[18]The Eleventh Circuit has emphasized that the "contract formed by the school district's acceptance of Title IX funding" cannot be "'breached' by any employee that simply supervises another employee." *Floyd v. Waiters*, 133 F.3d 786, 792 n.11 (11th Cir. 1998), *vacated and remanded by* 525 U.S. 802 (1998), *reinstated by* 171 F.3d 1264 (1999). The court expressed concern that:

> [In] many school districts—especially with tens of thousands of students—some supervising positions may be five or six steps removed from the board of education and the superintendent of schools.  We do not think that school districts, in reality, have actual knowledge—the knowledge to support potentially million-dollar liability for the school district—whenever, for example, a deputy assistant director of transportation (but no one higher-up) may know that a bus driver is harassing someone or the foreman (but no one higher-up) of the district's emergency plumbing crew has knowledge of misconduct, and these supervisors could fire (but do not) the harassers.

1264, 1264 (11th Cir. 1999).

DYS correctly points out that, in order to prevail on its Title IX claims, Plaintiffs must establish that after receiving actual notice of the misconduct, the school district official responded with "deliberate indifference." *Gebser*, 524 U.S. at 290.  Liability arises from "an official decision by the recipient [of federal funds] not to remedy the violation." *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 642 (1999).  DYS's arguments pertaining to deliberate indifference, however, do not address Mr. Caldwell's responses to complaints and reports of alleged abuse. Instead, DYS discusses Mr. Wood's actions in 2001, when Plaintiffs went public with this lawsuit (Doc. 379 at 21, 23); an investigation in 1998 (*Id*. at 22); and the transfer of defendants Bragg and Davidson to an all-male school

_____

*Id*.  Mr. Caldwell was the highest-ranking official on the Chalkville Campus; he managed all programs and employees at Chalkville.  His direct supervisor (Mr. Booker, Director of Institutional Services) and the Executive Director of DYS worked approximately one hundred miles away in Mt. Meigs.  These circumstances simply do not raise the type of concerns outlined by the Eleventh Circuit in *Floyd*.

In its original decision in *Floyd*, the Eleventh Circuit also referred to a "Title IX employee" or "coordinator" responsible for the district's compliance with Title IX.  *Id*. at 792 n.10.  The Eleventh Circuit has never held, however, that this responsibility may only be vested in one person.  Assuming the Executive Director of DYS has the role of "Title IX coordinator," it is not the law that a school district can delegate duties and responsibilities to lower supervisors at campuses throughout the state and then keep their one "coordinator" isolated from where many campuses' day-to-day program decisions are made.

in August of 1998 (Docs. 468 at 8; 471 at 130-31).  In fact, the evidence shows that Caldwell said he did not recall an investigation of Zeigler in response to the incidents noted in the May 17, 1994, memorandum (Doc. 471 at 73), and Zeigler described his "discussion" of the allegations with Caldwell as a brief encounter in a parking lot where Mr. Caldwell asked him if he wanted him to "do this formal or informal," did not inform him what kind of complaints had been made, and did not tell him who had made them (Doc. 437 at Ex. 95 pp. 168-70).  In addition, DYS does not point to, nor is there evidence of, remedial action taken in response to Ms. Tate's incident report in 1995, Dr. Burge's letter in 1997, or numerous other complaints and reports received by Mr. Caldwell.

In short, DYS has failed to meet its burden at summary judgment.  DYS has not established that, as a matter of law, "appropriate persons" did not have actual notice of employee misconduct, or if they did have such notice, that they did not respond with deliberate indifference.  Therefore, for the reasons outlined above, DYS's motion for summary judgment on Plaintiffs' Title IX claims is due to be denied.[19]

---

[19]DYS also argued in its brief that Plaintiffs cannot prevail on theories of agency, respondeat superior, or constructive notice under Title IX.  The Court agrees that these

2.      State Law Claims.

DYS moved for summary judgment on Plaintiffs' state law claims. However, Plaintiffs do not allege state law claims against DYS.  The only state law claims alleged in the complaint are by plaintiff Seitz against defendant Zeigler.  (Doc. 211 at 46-47.)  Therefore, this issue is moot.

3.      Compensatory Damages.

DYS argues that Plaintiffs have failed to provide evidence of actual injuries justifying an award of compensatory damages.  (Doc. 379 at 34.) While Plaintiffs do not present any legal argument with regard to DYS's assertion regarding compensatory damages, Plaintiffs have testified that they were sexually harassed, abused, and/or raped by DYS employees as a result of the school district's failure to prevent or end such abuse at Chalkville.  If proven at trial, these are actual injuries for which a plaintiff can receive compensation.  *See e.g.*, *Griffen v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001).  Therefore, DYS's motion for summary judgment on Plaintiffs' claims for compensatory damages is due to be denied.

_____

are improper legal theories, but as explained above, these are not the theories used by this Court to decide that defendant DYS's motion for summary judgment is due to be denied.

4.    Punitive Damages.

Lastly, DYS has moved for summary judgment on Plaintiffs' requests for punitive damages.  However, Plaintiffs' claims for punitive damages against DYS have already been dismissed by this Court.  (Docs. 241 at 3, 37; 242 at 2.)  Therefore, this issue is moot.

C.    Section 1983.

Defendants Wood, Caldwell, and Barbee have all moved separately for summary judgment on Plaintiffs' § 1983 claims.   (Docs. 380, 384, 389.) These defendants were sued in both their individual and official capacities. Following this Court's order on Defendants' motions to dismiss, only individual capacity claims remain against Wood and Barbee; both individual and official capacity claims remain against Mr. Caldwell.  (Docs 241, 242.)

1.    Defendant Wood.

Mr. Wood maintains that he is entitled to qualified immunity on plaintiff Angelica Seitz's[20] § 1983 claim against him in his individual capacity because: (1) she has not properly alleged the violation of a constitutional

_____

[20]Only plaintiffs Crystal Lewis and Angelica Seitz named Mr. Wood as a defendant in their complaint, and this Court held that Ms. Lewis' claims against Mr. Wood were due to be dismissed on January 22, 2004.  (Doc. 241 at 24.)

right; and (2) she cannot show that Wood had the actual or constructive knowledge of alleged abuse at Chalkville necessary to establish the causal connection required for supervisor liability under § 1983.  (Doc. 381.)

a.    Allegation of a Constitutional Violation.

Defendant Wood argues that Plaintiff Seitz has not "alleged" a constitutional violation or deprivation of a constitutional right in her complaint.  (Doc. 381 at 6-9.)  "The Supreme Court has stated that 'a court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual [statutory or] constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999).  The Court addressed this issue in its opinion entered on January 22, 2004, and concluded that the plaintiffs had, in fact, sufficiently alleged constitutional violations of their due process and liberty rights under the Fourteenth and Eighth Amendments, which were clearly established prior to the incarceration of the first plaintiff in this action.  (*Id.* at 11-21.)  Defendant has not pointed to any new law or facts that change the Court's decision on this issue, and Plaintiff has provided

sufficient evidence from which a jury could conclude that she was deprived of these constitutional rights at Chalkville.

          b.     Causation.

Mr. Wood maintains that he is entitled to qualified immunity even if Plaintiff Seitz has properly alleged the violation of a "cognizable constitutional right." (Doc. 381 at 9-10.) He argues that he acted within his discretionary authority as Executive Director (*Id*. at 11),[21] had no knowledge of Plaintiff's allegations or any widespread abuse on the Chalkville Campus (*Id*. at 14, 18, 22, 26, 30), and did not cause the constitutional deprivation (*Id*. at 29).

"It is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (quoting *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986)). "Supervisor liability occurs either when the supervisor personally participated in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional

---

[21]Plaintiffs do not contest that Mr. Wood acted within his discretionary authority.

deprivation." *Id.* (citing *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988)).

"The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* (citing *Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) (per curiam)).    "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.*   "In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper 'custom or policy . . . results in deliberate indifference to constitutional rights.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)).

Plaintiff Seitz does not allege that Mr. Wood personally participated in her sexual abuse.  She does not claim to have reported her abuse to Mr. Wood.  Rather, Plaintiff asserts that "each of the supervisory defendants had actual knowledge of the widespread abuse." (Doc. 447 at 21.)  In fact, the "memorandum response" addressing Defendants' motions for summary judgment on Plaintiffs' § 1983 claims addresses defendants Wood, Dupree,

Rickicki, and Booker as a whole,[22] and Plaintiffs cite to a number of complaints, memos, and letters regarding possible sexual abuse at Chalkville that range from February 22, 1993, to January 24, 2001. (Doc. 447 at 17-21.) Mr. Wood took the position of Executive Director at DYS on July 19, 1999. (Doc. 423 at 224.) While many of the enumerated complaints and reports were received or written by Mr. Caldwell, Plaintiffs do not connect any of the documents dated after July 19, 1999, specifically to Mr. Wood. Mr. Caldwell reported to Mr. Booker, who reported to Mr. Wood. It is conceivable that Mr. Wood, who worked nearly one hundred miles away in Mt. Meigs, never had notice of these allegations of abuse and had no knowledge of the pattern of abuse that had developed at Chalkville.[23]

_____

[22]Because the Court determined that defendants Dupree, Rickicki, and Booker were entitled to summary judgment on Plaintiffs' claims because their suit was barred by the statute of limitations and Plaintiffs could not show grounds for equitable tolling or estoppel, it is not necessary to address these defendants' arguments for summary judgment based on qualified immunity.

[23]While actual notice is not a requirement when a plaintiff seeks to establish a supervisor's liability by showing that abuse was "widespread," the allegations of sexual harassment and abuse that are the subject of this lawsuit were not conducted in the open, and unlike a physical beating, their effects were not obvious to those who did not participate in the abuse. In order to charge an official with failure to act in light of widespread, "obvious, flagrant, rampant and continued" instances of abuse, a plaintiff needs to show that the official had some level of awareness or knowledge regarding those circumstances. Abuse that is "obvious" to an official who works on campus, supervises the employees directly, and has received numerous complaints may not be "obvious" to another official who works one hundred miles away and does not receive such complaints.

Plaintiff Seitz has failed to point to any evidence to the contrary.

Plaintiff has not presented sufficient evidence to show that Mr. Wood should be charged with notice of widespread abuse at Chalkville that was "obvious, flagrant, rampant and of continued duration," nor has she shown that he responded to any actual notice of such abuse with deliberate indifference. Therefore, Wood's motion for summary judgment on Plaintiff's § 1983 individual capacity claim is due to be granted.[24]

> 2. Defendant Caldwell.

Mr. Caldwell has moved for summary judgment on Plaintiffs' § 1983 claims against him in both his official and individual capacity. He also maintains that he cannot be held liable as a matter of law for any alleged improper conduct occurring at the Sequoya School, nor any claim that stems from misconduct occurring during the A.W. Consent Decree. (Doc. 390.)

> a. Official Capacity Claims.

The official capacity claims against defendant Caldwell are limited to requests for declaratory and injunctive relief. (Doc. 211 at 6, ¶ 17.) Mr.

---

[24]Because the Court has concluded that summary judgment is due to be granted for the reasons stated, it is unnecessary to address Defendant's arguments that Plaintiffs are not entitled to collect compensatory or punitive damages.

Caldwell maintains that Plaintiffs cannot seek prospective injunctive relief because none are in the custody of DYS.  (Doc. 390 at 2 n.2.)  The Court addressed this issue at the motion to dismiss stage.  For the reasons stated in the Court's memorandum of opinion entered on January 22, 2004 (Doc. 241 at 29-34.), Caldwell's motion for summary judgment on Plaintiffs' § 1983 official capacity claims is due to be granted.  Plaintiffs do not have standing to pursue claims for declaratory or injunctive relief against Mr. Caldwell.

> b.    Individual Capacity Claims.

Mr. Caldwell contends that he is entitled to qualified immunity on Plaintiffs' remaining § 1983 claims.  He argues that he was acting pursuant to his discretionary authority[25] and Plaintiffs cannot establish his liability as a supervisor because he did not cause their alleged constitutional deprivations.[26]  (Doc. 390.)

---

[25]Plaintiffs do not contest that Mr. Caldwell acted pursuant to his discretionary authority.

[26]Caldwell also argues that his alleged actions did not violate clearly established constitutional law or federal statutes.  However, as addressed above (section V(C)(1)(a)), this Court has concluded that the plaintiffs have, in fact, properly alleged constitutional violations of their due process and liberty rights under the Fourteenth and Eighth Amendments, which were clearly established prior to the incarceration of the first plaintiff in this action.  (Doc. 241 at 11-21.)  Mr. Caldwell has not pointed to any new law or facts that change the Court's decision on this issue, and Plaintiffs have produced sufficient evidence from which a jury could conclude that they were deprived of these

Plaintiffs do not contend that Mr. Caldwell participated in their abuse.  As outlined above, they cannot prevail on their § 1983 claims on a theory of respondeat superior.  Rather, Plaintiffs must present sufficient evidence that a history of widespread abuse at Chalkville put Mr. Caldwell on notice of the need to correct the alleged deprivation, and he failed to do so.  *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Plaintiffs have provided evidence that Mr. Caldwell had notice of alleged sexual abuse by employees at the Chalkville campus through complaint forms, notes, letters, internal memoranda, and reports, which are dated as early as 1994 and continue through 2001.  (Doc. 428 at 11-17.)[27] Many of these documents were received by Mr. Caldwell or generated by Mr.

---

constitutional rights at Chalkville during Caldwell's employment as Superintendent.

[27]The Court notes that evidence such as a complaint of physical abuse by *male* students is not evidence of alleged sexual abuse of female students at Chalkville.  These kinds of complaints were not considered when the Court made its decision in this case.  However, Defendants have attempted to argue in their responses to Plaintiffs' statements of facts that certain complaints are only of a physical nature and do not compel the conclusion that the alleged misconduct was "sexual."  At summary judgment, the Court is required to view the evidence in a light most favorable to the plaintiffs.  At this juncture then, it is reasonable to conclude that a complaint by a female student that a male employee "put his hands" on her or "messed" with her could be viewed by a reasonable jury as a complaint of sexual misconduct.

Caldwell.[28]  The documents refer to employees over whom Mr. Caldwell had supervisory authority as Superintendent of Chalkville.   In fact, several complaints included the names of defendants Zeigler and Mack, employees accused by six of the seven plaintiffs in this case, before any of the plaintiffs were confined at Chalkville.  Mr. Caldwell argues that he "did not have any type of notice that any of the alleged perpetrators would commit alleged sexual abuse."  (Doc. 390.)  Viewing the evidence in the light most favorable to the plaintiffs, as this Court is required to do at summary judgment, the Court disagrees.   Plaintiffs have presented sufficient evidence for a reasonable jury to conclude that there was a history of widespread abuse by employees on the Chalkville Campus, and the abuse was "obvious, flagrant, rampant and of continued duration" to Mr. Caldwell.[29]  *Brown*, 906 F.2d at 671.  Therefore, the Court must address Mr.

_____

[28]Caldwell served as the Superintendent of DYS Chalkville Campus from October 20, 1990, until October 1, 2001.  (Doc. 423 at 227.)

[29]Caldwell argues that these complaints only establish "that over an eight year period we have a series of isolated occurrences."  (Doc. 390 at 22.)  The Court disagrees. All patterns can be broken down to a "series" of individual events.  What this Court must determine is whether there was enough of a history to put a responsible supervisor on notice that action needed to be taken.  At this stage of proceedings, it is the Court's conclusion that Plaintiffs' evidence is sufficient to create a genuine issue of fact as to whether Mr. Caldwell had such notice.

Caldwell also argues that there could not possibly have been widespread abuse at

Caldwell's response(s).[30]

Plaintiffs must also show that Mr. Caldwell failed to take action necessary to correct the widespread abuse. *Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990). Defendant Caldwell argues that, "given the investigations [he] either ordered or had conducted and the disciplinary hearings he held when staff misconduct was found, [he] cannot be found to have been deliberately indifferent to allegations of abuse." (Doc. 390 at 25.) He alleges that all known complaints were investigated. (Doc. 459 at 7-8). There is evidence that Caldwell investigated and held/ordered hearings for *some* complaints or reports. However, there is no evidence that other complaints or reports were investigated. Defendant maintains that, "if warranted, Caldwell would hold hearings and recommend

---

Chalkville because "such abuse could not have continually gone unnoticed by the A.W. monitors, A.W. attorneys, ACA, and the host of volunteers who were at Chalkville" from 1993 through 1998 (Doc. 390 at 22), and "the ACA accredited Chalkville in 1996 and 1998" (Doc. 459 at 4).  This is an argument that must be weighed by a jury against Plaintiffs' evidence of alleged abuse.

[30]Caldwell attempts to convince this Court that "institutional facilities such as Chalkville, which serve troubled and disturbed individuals, will always have allegations of alleged abuse," and "[n]o correctional facility can ever hope to be free of accident, assaults, poor judgments, and other events that result in inmate (and staff) harm." (Doc. 429 at 3.)  It is for precisely those reasons that a court is required to examine the supervisor's response.

disciplinary measures for any alleged staff misconduct he believed to be founded." (*Id*. at 8.)  However, Caldwell testified he utilized a "clear and convincing standard" to conclude whether abuse had occurred (Doc. 460 at 119, ¶ 278), and there is evidence that often remedial action was not taken because the girls were presumed to be liars and troublemakers.  In most cases, allegations were handled internally (if they were addressed at all), and the authorities were not notified.

A brief investigation, a reprimand to "be conscientious," and the occasional hearing may be sufficient, although ultimately ineffective, when handling a few allegations of sexual abuse that cannot be substantiated. However, given the number of complaints and reports of alleged sexual abuse over an approximate eight-year period on the Chalkville campus—many of which include the same employees' names—a reasonable supervisor should have realized that he or she had a bigger problem, which required a different solution.  *See Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) ("[Defendant] might be liable if a history of widespread abuses put him on notice of the need for improved training or supervision, and he failed to take action.")

Viewing the evidence in the light most favorable to the plaintiffs, this Court cannot conclude that defendant Caldwell has established, as a matter of law, that he reacted appropriately and did not respond to the widespread abuse at Chalkville with deliberate indifference.  Plaintiffs have produced sufficient evidence to create a genuine issue of fact as to whether Mr. Caldwell's response, in light of the information before him, was clearly unreasonable, and whether his custom or policy of requiring "clear and convincing evidence" and not responding to some reports or complaints led employees to believe that misconduct would not be penalized, and was therefore permitted—especially if the only evidence against them was the student's word.   Therefore, defendant Caldwell's motion for summary judgment on Plaintiffs' § 1983 individual capacity claims is due to be denied.

c.   Res Judicata.

Mr. Caldwell argues that he cannot be held liable for any conduct that allegedly occurred while Chalkville operated under the "A.W. Consent Decree" because the principles of res judicata apply.  (Doc. 390 at 25-26.) "It is a fundamental premise of preclusion law that 'a nonparty to a prior decision cannot be bound by it unless he had sufficient identity of interest

with a party that his interests are deemed to have been litigated.'" *In re Birmingham Reverse Discrimination Employment Litig.*, 833 F.2d 1492, 1498 (11th Cir. 1987) (quoting *Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir. 1985)). "[E]ven if a consent decree purports to affect the rights of third parties, those parties are not bound by the terms of the decree unless their interests were adequately represented by a party to the decree." *Id.* (citing *Local No. 93 v. City of Cleveland*, 478 U.S. 501 (1986)). Defendant Caldwell has not established that these standards have been met—or that the consent decree addressed issues identical to the claims in this case. Therefore, his motion for summary judgment on this issue is due to be denied.

> d.     Alabama Statutory Law.

Lastly, defendant Caldwell claims that he cannot be held responsible for any staff misconduct that may have occurred at the Sequoyah School as a matter of Alabama statutory law. In support of his argument, Mr. Caldwell cites the provisions that establish and/or define the position of the Superintendent of Education and the School Principal. (Doc. 390 at 28-29.) These statutory provisions do not establish that Mr. Caldwell is not responsible under § 1983 as a supervisor for alleged employee misconduct

at the Sequoyah School, located at the Chalkville Campus, over which he had administrative authority.  Therefore, Defendant's motion for summary judgment on this issue is due to be denied.

        3.    Defendant Barbee.

  Mr. Barbee argues that he is entitled to qualified immunity on Plaintiffs' § 1983 claims because: (1) he did not cause Plaintiffs' alleged constitutional deprivations; (2) Plaintiffs cannot establish the violation of a clearly established constitutional right; and (3) he had no state-imposed duty to protect the students.  (Doc. 387.)

  Defendant Barbee argues that, even assuming Plaintiffs have provided sufficient evidence that they were deprived of their constitutional rights, he did not cause Plaintiffs' alleged constitutional deprivations because he was never aware of their abuse—or any allegations of abuse on the Chalkville Campus.  (Doc. 387.)  Without any citations to the record, Plaintiffs contend that Mr. Barbee was aware of complaints against Mr. Lewis, Mr. Coleman, and Mr. Zeigler.[31]  (Doc. 431 at 13-14.)  Yet, Plaintiffs

---

[31]Plaintiffs also argue that they have created a genuine issue of fact regarding Mr. Barbee's liability as a supervisor because he "personally participated in the alleged constitutional violation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  (Doc. 431 at 12-13.)  Plaintiffs submit the summary of an interview with a former student,

never connect Mr. Barbee to the majority of these complaints.  Plaintiffs

have presented the Court with: (1) a statement by a former student

(confined at Chalkville for portions of 1998 and 1999) who claims that after

reporting abuse to a teacher, she was called into Mr. Barbee's office where

she explained "what Mr. Ziegler had been doing," and then Mr. Barbee

yelled at her and called her a liar (Doc. 440 at Ex. 179); and (2) an incident

report dated May 19, 2000, filed by Mr. Lewis stating that a student refused

to sign a charge for "lying on staff" (she allegedly threatened to accuse Mr.

Lewis of sexual harassment) while in Mr. Barbee's office (Doc. 431 at 18).[32]

_____

which contains the allegation that Mr. Barbee had sexual relationships with girls at
Chalkville.  First, the Court notes that this former student was confined in 2000 or
2001—after six of the seven plaintiffs in this case had left Chalkville.  (Doc. 442 at Ex.
230.)  Second, this piece of evidence is hearsay.  The document is written by Donna
Williams, who recorded what a former student told her—which is that "several girls *told
her* that they had sex with Zig, Mr. Barbee, the principal, and Mr. Bloodsoe, the assistant
principal." (*Id.* (emphasis added).)  The former student then named "several of the girls
who stated this to her."  (*Id.*)  Such evidence is not admissible to prove the truth of the
matter asserted, and even if it were, it does not establish that Mr. Barbee participated
in Plaintiffs' abuse.  Another statement by a former student is dated May 12, 2001, and
states that "I witnessed [Mr. Barbee] make sexual comments toward [a student].  He
touched [another student's] rear." (Doc. 442 at Ex. 229.)  This statement does not say
when she witnessed these occurrences, does not name the plaintiffs as the subjects of
this alleged conduct, and does not establish that Mr. Barbee participated in Plaintiffs'
abuse.

[32]Plaintiffs do not include any citations to the record for either of these pieces of
evidence and do not include the latter report in their evidentiary submission.  However,
this report can be found in the record at Document # 392, Exhibit 55.

At most, Plaintiffs have shown that Mr. Barbee had knowledge of a couple of allegations of possible sexual abuse from 1997 through 2001 that did not involve the plaintiffs,[33] and one of these allegations occurred after six of the seven plaintiffs had left Chalkville.  This is not evidence of widespread abuse at the Sequoyah School, and this is not evidence that Mr. Barbee had a policy of permitting sexual abuse against students at the school.  This limited evidence also does not create a question of fact regarding whether Mr. Barbee's response constitutes deliberate indifference.  There is no evidence he was aware of prior allegations of abuse against Mr. Zeigler and Mr. Lewis; Mr. Barbee called the first girl to his office for a discussion of her allegations in 1998 or 1999; and it was determined that the second girl's threat was misbehavior—not an honest effort to make a complaint.

Plaintiffs argue that they have shown "continued, blatant, and widespread" abuse at the Chalkville Campus. (Doc. 431 at 13.) However, Mr. Caldwell was Superintendent of the Chalkville Campus.  Mr. Barbee was

---

[33]Another student wrote: "[Mr. Barbee] *supposedly knew* of Mr. Coleman's actions and the other mens [sic].  He helped Mr. Coleman get away with Jennifer Serna." (Doc. 442 at Ex. 229 (emphasis added).)  This student, however, does not explain how she has personal knowledge of these allegations, and Plaintiffs have not established that she had such knowledge.

principal of the Sequoyah School, a "subunit" of the Chalkville Campus. (Doc. 431 at 4.)  He was responsible for supervising education programs at the school.  It is conceivable, then, that Mr. Barbee had a restricted view of the conditions occurring on the campus as a whole, and a limited sphere of influence.  Plaintiffs do not differentiate for the Court which alleged instances of abuse occurred at the school during school hours, and which occurred in other areas of the campus.  Many reports regarding teacher misconduct at Chalkville were directed to, and received by, Mr. Caldwell; therefore, it is conceivable that these reports were never shared with Mr. Barbee.  In short, Plaintiffs have failed to produce sufficient evidence showing that there was a history of widespread abuse at the Sequoyah School, which put Mr. Barbee on notice of the need to take corrective action, or that Mr. Barbee had an improper custom or policy that deprived the plaintiffs of their constitutional rights.  Therefore, his motion for summary judgment on Plaintiffs' § 1983 claims is due to be granted and it is not necessary to address his remaining arguments.

VI.   Conclusion.

A separate order in conformity with this opinion will be entered.

Done this <u>1st</u> day of <u>August 2005</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153